**THOMPSON et al. v. KLEINMAN et al.
(No. 8961.)**

(Court of Civil Appeals of Texas. Dallas.
Feb. 9, 1924.)

1. **Principal and surety ⊜⟞100(6)—Sureties of contractor held not relieved from liability by agreement with owner for additional work.**

A verbal agreement between the owner of a building and a contractor making alterations thereon, independent of, and in addition to, the main contract, which neither added to nor omitted from the work contemplated by the original contract, nor lessened nor increased the liability of the contractor's bondsmen, *held* not operative to release them from liability.

2. **Principal and surety ⊜⟞97—Surety discharged by unassented to material change in original contract.**

Under a contract of suretyship, a surety must be dealt with in fairness and good faith, and must assent to any material change or variance in the terms of the original contract, or he will be discharged.

3. **Principal and surety ⊜⟞117—Judgment against sureties on contractor's bond held warranted, though unauthorized payments made to contractor.**

In an action by materialmen against the owner of a building, the contractor employed thereon, and the sureties on his bond, conditioned for the payment of claims of "all persons, firms, and corporations who may furnish any material or perform labor," etc., judgment *held* properly rendered against the sureties, though the owner had made payment for certain extras to the contractor in a matter not provided for by their contract.

4. **Judgment ⊜⟞248 — Judgment for owner of building and against contractor's sureties for attorney's fees held unauthorized.**

In an action by materialmen against the owner of a building, the contractor employed thereon and his sureties, judgment in favor of the owner and against the sureties for attorney's fees *held* unauthorized by the pleadings or proof.

5. **Mechanics' liens ⊜⟞115(4)—Payment of contract price held defense in action by materialmen against owner.**

Where the owner of a building sued jointly with a contractor employed thereon, and his sureties by materialmen had paid the entire contract price for the improvements in accordance with the terms of the contract, except for a small sum which he tendered into court, and at the time of making such payments had no knowledge of outstanding materialmen's claims, *held*, that a judgment against him in favor of such materialmen was erroneous.

6. **Mechanics' liens ⊜⟞99(1)—Strict compliance with requirements as to notice prerequisite to lien.**

Strict compliance by materialmen, subcontractors, mechanics, and laborers, with the statutory requirements as to the giving of written notice of each and every item furnished, are necessary prerequisites to establishment of their claim for preference in payment, and a lien upon the property of the owner.

7. **Evidence ⊜⟞71, 89—Presumption of receipt of letter in rebuttable; and does not arise unless letter properly addressed.**

The presumption that a letter properly stamped and directed to the addressee's post-office address, and deposited in the regular receptacle for mail, is received by the addressee, is rebuttable, and does not arise unless it appears that the letter was properly directed to the postoffice address of the addressee.

8. **Deposits in court ⊜⟞11—Action of court in permitting owner to retain sum for attorney's fees held, in effect, judgment against contractor's sureties for such fees.**

In an action against the owner of a building, a contractor employed thereon, and his sureties, where the owner tendered into court a balance due under his contract with the exception of an amount which he claimed a right to retain as attorney's fees, the court's action in distributing the amount so tendered to materialmen *held* in effect an unauthorized judgment in negative form for attorney's fees, against the principal and sureties on the contractor's bond.

Appeal from District Court, Dallas County; Royal R. Watkins, Special Judge.

Action by the Groves-Barnes Lumber Company, a corporation, against Louis Kleinman, A. J. Walling, H. E. Thompson, and others, wherein A. S. Johnson and others intervened. Judgment for plaintiff and interveners against all defendants, and judgment for Kleinman against his codefendants, and defendants, with the exception of Walling, appeal. Reversed and rendered in part; affirmed in part.

House & Wilson, of Dallas, for appellants.
Claude M. McCallum, George Sergeant, and E. P. Bryan, all of Dallas, for appellees.

LOONEY, J. Groves-Barnes Lumber Company, a corporation, sued Louis Kleinman, owner, A. J. Walling, contractor, and H. E. Thompson, H. R. Groves, and W. C. Barnes, sureties, on the bond given by Walling to Kleinman to insure the faithful performance of the building contract. The suit was for the value of lumber and material sold and furnished by the plaintiff to Walling, contractor, and used in certain improvements made on a house owned by Kleinman located on Sanger avenue in the city of Dallas. Plaintiff claimed that it had fixed a lien under the statute on Kleinman's lot and improvements, and asked for foreclosure of same.

A. S. Johnson, Mechanics' Planing Mill, Lincoln Paint & Paper Company, Hanna Lumber Company, Acme Screen Company, and F. A. Jarvis, intervened in the suit, alleging that they each furnished material and performed labor for Walling, the contractor,

---

⊜⟞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

for which they asked judgment and foreclosure of the statutory lien on the house and premises.

The case was tried by the court without the intervention of a jury, and resulted in a judgment for plaintiff and interveners against Kleinman, the owner, Walling, the contractor, and Thompson, Groves, and Barnes, sureties on the contractor's bond, for the value of material and labor sued for, and decree was entered establishing their liens respectively and decreeing foreclosure on the house and lot.

Judgment was rendered in favor of Kleinman, the owner, against Walling, contractor, as principal on the bond, and against Thompson, Groves, and Barnes, sureties, for the sum of $1,365.93, being the aggregate of the amounts for which judgment was entered in favor of the plaintiff and the interveners, and judgment was also rendered in favor of Kleinman against these parties for the sum of $100 "as damages for attorney's fees," for which execution was authorized.

Kleinman alleged that he paid in full the amount contracted to be paid Walling for the improvements, except the sum of $276.28, which amount he tendered into court less $100, which he claimed a right to retain as damages for attorney's fees. The $176.28, balance due on the contract after deducting $100 attorney's fees allowed, was by the judgment ordered paid to the plaintiff and interveners in proportion to their respective claims.

The defendants Thompson, Groves, and Barnes, sureties on the contractor's bond, gave notice of and have perfected their appeal. The defendant Kleinman also excepted to the judgment, gave notice of, and has perfected his appeal.

The facts material for our consideration are as follows:

On November 10, 1917, Louis Kleinman, owner, and A. J. Walling, contractor, entered into a contract for the alteration and addition to a certain residence on Sanger avenue in the city of Dallas according to plans and specifications made by Lang & Witchell, architects. The provisions of the contract brought under review are as follows:

" * * * 3. Should any alterations be required in the work shown or described by the drawings or specifications, a fair and reasonable valuation of the work added or omitted shall be made by the architects and the sum herein agreed to be paid for the work according to the original specifications shall be increased or diminished, as the case may be. * * *

"9. The contractor shall make no claim for additional work unless the same shall be due in pursuance of an order from the architects and notice of claims shall be made to the architects in writing within ten days of the beginning of such work. * * *

"13. And it is hereby mutually agreed between the parties hereto that the sum to be paid by the owner to the contractor for said work and materials shall be forty-one hundred ($4,100.00) dollars, subject to the additions or deductions on account of alterations heretofore provided for, and that such sum shall be paid in current funds by the owner to the contractor in installments as follows: Architects will make semimonthly estimates of labor and material incorporated in the building, less fifteen (15%) per cent.; said per cent. to be retained as additional security in connection with the bond for thirty-one hundred ($3,100.00) dollars, and will be paid with the final estimate when the work is completed and accepted by the architects and owner—it being understood that the final payment shall be made within six days after this contract is completely finished.

"14. It is further mutually agreed between the parties hereto that no certificate given or payment made under this contract, except the final certificate or final payment, shall be conclusive evidence of the performance of this contract, either wholly or in part, against any claim of the owner and no payment shall be construed to be an acceptance of any defective work."

Walling, as contractor, gave Kleinman, the owner, a bond to insure the faithful performance of his contract, with defendants Thompson, Barnes, and Groves as sureties, the material provisions of which are as follows: .

That the contractor, Walling, and the sureties named were held and firmly bound unto Louis Kleinman, the owner, "as well as to all persons, firms and corporations, who may furnish material for or perform labor on the work, building, or improvements, contemplated in a certain contract hereinafter mentioned, in the sum of $3,100.00 * * * to be paid to the said Louis Kleinman and to such person, firm, and corporations who may furnish material for or perform labor on the work, building, or improvements contemplated in the contract hereinafter mentioned, their heirs, executors, and administrators, jointly and severally, for which we, the principal and sureties herein, do hereby jointly and severally bind ourselves, our heirs, executors, and administrators, firmly by these presents. The condition of this obligation is such that if the said A. J. Walling, contractor, shall well and truly keep, perform and fulfill all and every, the covenants, conditions, stipulations, and agreements to be kept, performed and fulfilled by him as set forth and contained in a certain contract entered into by and between the said A. J. Walling, contractor, and the said Louis Kleinman, owner, dated the 10th day of November, 1917, for the construction of the work, building, or improvements mentioned in said contract, * * * and shall pay to the said Louis Kleinman any and all damages which he may sustain as provided in said contract, and all forfeitures to which he may be entitled under the terms of said contract, by reason of malperformance or nonperformance on the part of the said A. J. Walling of any of the covenants, conditions, stipulations, and agreements of said contract on his part to be kept and performed and if the said A. J. Walling shall promptly make payment to all persons, firms, and corporations supplying him with labor and materials in the prosecution of the work provided for in such con-

tract, then this obligation shall be void, otherwise to remain in full force and effect.

"This bond is made for the use and benefit of all persons, firms, and corporations who may furnish any material or perform labor for or on account of said work, building, or improvements, and they and each of them are hereby made obligees hereunder, the same as though their own proper names were written herein, as such, and they and each of them may sue hereon."

Walling encountered difficulty in making the bond, so he agreed with Thompson that if he would make the bond they would go "fifty-fifty" on the contract; that is, as between themselves, would become equal partners. To this Thompson agreed and secured Groves and Barnes, who, with himself, became sureties on Walling's bond.

It was understood that Thompson, for the protection of himself, Groves and Barnes, the other sureties, should collect all moneys from Kleinman, the owner, on estimates to be furnished by the architects, and should disburse the money in payment for material and labor used and performed on the Kleinman job, and, accordingly, to carry out this purpose, the following note was addressed by Walling to Kleinman and agreed to by Thompson, Groves, and Barnes:

"Station A, Dallas, Texas,
"November 16th, 1917.

"Mr. Louis Kleinman, Owner, and Messrs. Lang & Witchell, Architects, City—Gents: Kindly make all estimates on the Kleinman job to me, as contractor, and to H. E. Thompson, H. R. Groves and W. C. Barnes, as trustees.
"[Signed] A. J. Walling.
"The above meets with our approval.
"[Signed] H. E. Thompson.
"H. R. Groves.
"W. C. Barnes."

The work was entered upon and completed according to contract; the final estimate issued by the architects was dated April 8, 1918.

As the work progressed, the architects issued nine estimates in favor of Walling, authorizing checks for the amount due, to be drawn payable to A. J. Walling, contractor, and H. E. Thompson, H. R. Groves, and W. C. Barnes, trustees, in accordance with the arrangement made between the parties as above stated. The nine estimates issued bear the following dates and are in the amounts, to wit: December 15, 1917, estimate No. 1 for $60; December 20, 1917, estimate No. 2 for $370; January 12, 1918, estimate No. 3 for $500; January 20, 1918, estimate No. 4 for $450; February 9, 1918, estimate No. 5 for $400; February 23, 1918, estimate No. 6 for $600; March 9, 1918, estimate No. 7 for $700; March 23, 1918, estimate No. 8 for $250; and April 8, 1918, final estimate No. 9 for $770.

On the estimates above, the defendant Kleinman issued checks for the amount indicated on the dates therein named, and paid the same to Walling on the contract under the arrangement mentioned above; that is to say, the checks were made payble to Walling, Thompson, Groves, and Barnes, but the money was actually collected by Thompson and disbursed for labor and material.

The following form was used in making out each of the estimates, varying only in the date, number of the estimate, and amount, to wit:

"(Date Line.)

"Louis Kleinman, Dallas, Texas—Dear Sir: This is to certify that Mr. A. J. Walling is entitled to his No. —— estimate for $—— for labor and material incorporated in alterations and additions to your residence on Sanger avenue. In making out check for this amount, kindly make same payable to A. J. Walling, as contractor, and to H. E. Thompson, H. R. Groves, and W. C. Barnes, as trustees, in accordance with signed agreement on file in our office.

"Yours very truly,
"[Signed] Lang & Witchell, Architects,
"Per Witchell.

"Received of Mr. Louis Kleinman $——, —— estimate on alterations and additions to residence on Sanger avenue.

"[Signed] A. J. Walling, Contractor,
"Per H. E. Thompson."

On each estimate Thompson signed a receipt for the full amount, except on the final estimate for $770 he receipted for only $500.

In addition to the above payments, Kleinman gave Walling a check for $100 without waiting for the architects' estimate. This check was drawn, as the others were drawn, in favor of Walling, Thompson, Groves, and Barnes, and was indorsed by Thompson and paid to Walling.

Prior to the completion of the improvements and the settlements and payments above mentioned, neither the plaintiff nor the interveners had given Kleinman or his agent, the architects, written notice of the items of material and labor furnished the contractor, nor had either filed in the office of the county clerk of Dallas county an itemized account of its, or their, claims as required by the statutes.

On June 20, 1918, Groves-Barnes Lumber Company deposited in the mail, properly stamped, a letter addressed to Louis Kleinman, care Lang & Witchell, Architects, Dallas, Texas, in which they inclosed what purported to be an "itemized account" of the material sold and furnished by them to Walling for improvements.

Kleinman did not receive this letter nor the account prior to the filing of this suit, and it was not shown that the letter ever reached the office of the architects. Kleinman at the time maintained both a residence and place of business in Dallas, but generally received his mail at his place of business on Elm street, where he had maintained a location for a number of years.

Plaintiff filed its itemized account and had the same recorded in the county clerk's office on June 20, 1918. Neither of the interveners at any time filed their itemized account in the office of the county clerk.

After the contract for the improvements was entered into between Kleinman and Walling, and during the progress of the work thereon, they entered into a verbal agreement, in which Walling was to do what they called certain "extras," that is, certain work and improvements in addition to the work and improvements described in the plans and specifications. These extras were not regarded by Kleinman, Walling, Thompson, or the architects as falling within the meaning of or comprehended by the contract, and therefore the architects took no notice of the same and issued no estimates with reference thereto.

Thompson was on the job, constantly associated with Walling as a partner and also, in his capacity as trustee for himself, Groves, and Barnes, knew all about the agreement for extras, in fact, was a partner with Walling as to the extras the same as to the main contract. The amount of extras was variously estimated by the witnesses, but the most satisfactory is that of Kleinman, who settled with Walling on a basis of $429.28. The extras were paid for by Kleinman to Walling direct, part in cash and part in merchandise purchased by Walling at Kleinman's store.

The appellants Thompson, Groves, and Barnes urged a number of assignments of error based on the ruling of the trial court on exceptions to pleadings and on the admission of evidence over their objections, all of which have received our consideration, but, as they are, in our opinion, without merit, are overruled.

The main contention of these appellants, presented by appropriate assignments of error and propositions, is that the judgment of the trial court against them as sureties on the bond of Walling is erroneous, in that they were discharged from its obligations, because Kleinman, the owner, and Walling, the contractor, violated the provisions of the bond and materially changed the contract, in this, that they entered into a subsequent verbal agreement, without the knowledge or consent of the sureties, for the performance of certain extra labor and improvements; that Kleinman further violated the terms of the contract, in that he made payments direct to the contractor for these extras without first having obtained from the architects specifications, estimates, and an order therefor, as contemplated by the contract and bond.

These appellants further contend that the court erred in rendering judgment in favor of Kleinman against them for the item of $100 attorney's fees, claiming that the same was not warranted by any provision of the contract or bond.

[1] We cannot assent to the proposition that the sureties were discharged from their liability on the bond. There was no material change in the bond or the original contract. The agreement between Kleinman and Walling for "extras," as they are denominated by the parties, was a verbal arrangement, independent of, aside from, and in addition to the main contract, and neither added to nor omitted from the work contemplated by the original contract, and neither lessened nor increased the liability of the bondsmen.

The subjects mentioned in the contract, for which the architects were required to give an order and fix a reasonable value, are additions to, or omissions from, the work and improvements described in or shown by the drawings or specifications—all such alterations would necessarily change the original contract and might, or might not, affect the liability of sureties, depending on the materiality of the changes.

Extras, however, such as those under consideration, did not, in our opinion, add to, or omit from, the work described in the drawings or specifications, hence did not alter or change the original contract, which was complied with and settled for in its entirety.

[2] The rule of law invoked by appellants is that the contract of suretyship is a voluntary matter on the part of the sureties, without profit or advantage to them; that the obligations of such an arrangement require that the surety shall be dealt with in fairness and good faith. The obligor and obligee are bound to know that, if they change or vary the terms of the original contract in a material sense, the sureties must assent thereto, because it is their contract as well as that of the principals; otherwise the sureties will be discharged. Brandt, Suretyship, vol. 3, § 416.

This rule of law was not, in our opinion, violated by the agreement between Kleinman and Walling for the extra work and improvements shown by the evidence, in that the same did not change or vary the terms of the original contract.

In addition to this, however, these sureties obligated themselves as follows: That they would well and truly pay "to such person, firm, and corporation who may furnish material for or perform labor on the work, building, or improvements contemplated in the contract," between Louis Kleinman, owner, and A. J. Walling, contractor; and it was further provided that "this bond is made for the use and benefit of all persons, firms, and corporations who may furnish any material or perform labor for or on account of said work, building, or improvements, and they and each of them are hereby made obligees hereunder the same as though their

own proper names were written herein as such, and they and each of them may sue hereon."

[3] A complete answer to the contention of the sureties is found in the doctrine announced by the Commission of Appeals in the case of Williams v. Baldwin, 228 S. W. 557, and approved by the Supreme Court, in which the following language is used:

"The rule is that, where the bond names the materialmen and laborers as obligees and is conditioned for the payment of claims for labor performed and material furnished, the sureties are not discharged from liability to persons furnishing labor and material by reason of the owner having made payments in violation of the bond unless they knew of such violation at the time of furnishing the material and performing labor. [Citing authorities.] The reason for the rule, as stated in the authorities cited, is that the sureties are charged with notice that they are entering into a contract that will be relied upon by persons who can in no manner control the conduct of the owner; when the owner has executed the contract and taken and approved the bond, he ceases to be the agent of third parties whom the contractor employs in the execution of the work or from whom he obtains materials, and the rights of such persons are unaffected by the subsequent acts of the owner in violating the provisions of the bond."

We therefore overrule this contention of the surety appellants, and believe that the judgment rendered against them in favor of plaintiff and interveners should be affirmed.

[4] We sustain, however, their assignment in which they challenge the correctness of the judgment in favor of Kleinman for $100 against them as damages for attorney's fees. In the first place, the pleading of Kleinman in which this item of damages is alleged, is not sufficient on general demurrer; and, even if legally sufficient to admit proof, there is no evidence to support the judgment in this respect. For this reason, appellant's assignment is sustained, and this feature of the judgment will be reversed and rendered in their favor.

[5] The appellee Kleinman's contention is that the judgment of the court below against him in favor of the plaintiff and interveners is erroneous and not sustained by the facts, in that the evidence showed that he had paid, by issuing checks in favor of Walling, Thompson, Groves, and Barnes, on estimates of the architects, in accordance with the terms of the contract and understanding as to the method of payment, the entire contract price for the improvements, except the sum of $276.28, before he was notified of either the claim of the plaintiff or of the interveners, and that he tendered into court, for the benefit of plaintiff and interveners, $176.28, being the balance due on the contract, less $100 which he claimed and which the court allowed him as damages for attorney's fees, that the claims of interveners were not filed and recorded in the office of the county clerk of Dallas county, and, as the contract had been fully complied with, and the contract price paid, as set out above, without notice on his part of these claims, the court erred in rendering judgment against him establishing the debts of plaintiff and interveners as liens against his property and foreclosing the same.

Under the facts as hereinbefore found, the contention of the appellant Kleinman must be sustained. The improvements contracted for between Kleinman and Walling were completed and paid for according to contract and agreement made for the protection of the sureties, except the sum of $276.28, before Kleinman received notice of the claims of plaintiff and interveners; hence he was not liable nor was his property in any way affected by notices received thereafter. This is the rule announced in Gordon-Jones Const. Co. v. Welder (Tex. Civ. App.) 201 S. W. 685, in the following language:

"Until notices of subcontractor's claims are given to owner, in accordance with the statute, he and contractor may make such settlements as they choose, and owner may make prepayments upon the contract, or may accept assignments of any future estimates to become due upon the same, or may obligate himself to assume any indebtedness of contractor to others, and should he do so, then such prepayments, assignments, or assumption of liability to others take precedence over all subcontractor's claims, of which the owner had only subsequent notice."

The case of First Baptist Church v. Carlton Lumber Co. (Tex. Civ. App.) 173 S. W. 1179, is also directly in point.

[6] There was no privity of contract between Kleinman and the plaintiff and interveners; they occupied the position of subcontractors, mechanics, laborers, and materialmen, having no direct contractual relation with Kleinman, the owner; their rights are purely statutory, and strict compliance with the statutory requirements as to the giving of written notice of each and every item furnished, etc., and by filing and having recorded in the office of the county clerk of the county in which the property is located, an itemized account of the claim within the time prescribed by the statute, are necessary prerequisites to the establishment of their claim for preference in payment, and for a lien upon the property of the owner.

This meaning is given to the statute by the Court of Civil Appeals in First National Bank v. Lyon-Gray Lbr. Co., 194 S. W. 1151, in the following language:

"We therefore conclude that none of the parties who sold material to Finn [original contractor] acquired a lien under the terms of the Constitution, but that they must rely upon a compliance with the provisions of the statute. * * * Parties claiming liens under these provisions of the statute must show that they have complied with the foregoing requirements, not

only in respect to giving the notice to the owner, but also in filing contracts or itemized accounts in the office of the county clerk"—citing Berry v. McAdams, 93 Tex. 431, 55 S. W. 1112; U. S. & Mex. Trust Co. v. Western Supply Co. (Tex. Civ. App.) 109 S. W. 377; Gilmer v. Wells, 17 Tex. Civ. App. 436, 43 S. W. 1058.

Other cases in point are Baptist Church v. Carlton Lumber Co., supra, and Ogburn v. Watson (Tex. Civ. App.) 190 S. W. 207.

The only claim filed for record was the account in favor of the plaintiff. This was filed on June 20, 1918, long after the improvements were completed, final estimates issued by the architects, and payments made by Kleinman. The claims of interveners were never filed or recorded, nor was notice thereof given Kleinman until after he had made settlement as hereinbefore set out. Kleinman received no notice of plaintiff's claim until suit was filed. It is shown, however, that on June 20, 1918, long after the settlements were made, a letter was addressed to him by plaintiff, "care Lang & Witchell, Architects, Dallas, Texas," inclosing what purports to be an "itemized account" of material sold and furnished by plaintiff to Walling and used in these improvements, but this letter was not received by Kleinman, and it is not shown that it ever reached the office of Lang & Witchell. It was further shown that Kleinman's postoffice address was not at the office of Lang & Witchell, but was at his place of business on Elm street in Dallas.

[7] The presumption that a letter properly stamped, directed to the addressee's postoffice address, and deposited in the regular receptacle for mail, is received by the addressee in the usual course of mail is a rebuttable presumption, and does not arise in any case unless it appears that the matter was properly directed to the postoffice address of the addressee. 9 Enc. of Evidence, 897; Trezevant v. Powell, 61 Tex. Civ. App. 449, 130 S. W. 234. This is immaterial, however, for if the notice had been received by appellant at the time it was mailed, it would not have affected the result, as he had already made settlement.

For these reasons, we conclude that the judgment of the tral court against Kleinman in favor of the plaintiff and the interveners is erroneous, and must be reversed and rendered in his favor.

[8] Kleinman, according to admissions, owed a balance on the contract of $276.28; he tendered that amount into court, less $100 claimed by him as damages for attorney's fees, occasioned by reason of the filing of this suit against him. The court allowed him to retain this sum and distributed the remainder, to wit, $176.28, among the plaintiff and interveners in proportion to their respective claims. The action of the court in permitting Kleinman to retain the $100 as damages was, in effect, a judgment, in negative form, against the sureties, in that it withheld that amount which should have been distributed among the plaintiff and the interveners in proportion to their respective claims, and to this extent would have lessened the liability of the principal and sureties on the contractor's bond.

The appeal of the sureties brings up the entire case against them for revision. The action of the court in allowing Kleinman to withhold the $100 was, in our opinion, erroneous, and the error is apparent of record. We therefore hold that the action of the court in this respect was error, for the same reason assigned above in regard to the judgment rendered in favor of Kleinman for $100 attorney's fees against the sureties upon the contractor's bond.

In accordance with these views, the judgment of the court below is reversed and rendered against Louis Kleinman for $276.28, the amount tendered in court, plus $100 erroneously allowed him as attorney's fees, to be distributed among plaintiff and interveners in proportion to their respective claims as established by the judgment below. The judgment below against Louis Kleinman in favor of A. J. Walling, the plaintiff, and interveners, is reversed and rendered in his favor. The judgment below in favor of Kleinman against A. J. Walling, the plaintiff, and interveners, for $100 attorney's fees, and for the sum of $1,365.93, is reversed and rendered against him. The judgment below in favor of plaintiff and interveners against A. J. Walling, H. E. Thompson, H. R. Groves, and W. C. Barnes, and in all other respects, is affirmed.

Reversed and rendered in part, and affirmed in part.