**U. S. FIDELITY & GUARANTY CO. et al. v. HENDERSON COUNTY et al.*** *
(No. 502-4042.)

(Commission of Appeals of Texas, Section B. Oct. 14, 1925.)

1. **Appeal and error ⬧⟹719(11)—Commission of Appeals will confine discussion to points assigned as error.**

Commission of Appeals need not discuss all questions presented to and decided by Court of Civil Appeals, but will confine discussion to points assigned as error.

2. **Bonds ⬧⟹41—Bond must have been executed solely on compulsion of void statute to be avoided as for duress.**

To avoid bond as for duress under compulsion of void statute, it must appear that it was executed solely on compulsion of such statute, and that rights secured thereby belonged to maker without such compliance.

3. **Highways ⬧⟹113(5)—Contractor's bond held not void as for duress under compulsion of void statute.**

Road contractor's bond to pay for labor and materials *held* not void as for duress, because executed pursuant to stipulation in contract that bond be given in compliance with Vernon's Ann. Civ. St. Supp. 1918, art. 5623a, which has been held unconstitutional; execution of such bond being required by Vernon's Sayles' Ann. Civ. St. 1914, art. 6394f.

4. **Highways ⬧⟹113(5)—Contractor's bond held to obligate makers to pay for materials, as well as labor, etc., as required by contract referred to therein.**

Road contractor's bond to "perform all the terms and conditions of the aforegoing contract," which covered "all work, labor, implements, machinery, equipment, and materials that are required to complete the work," *held* to obligate makers to pay for all materials, as well as labor, etc., required to complete work, whether Vernon's Sayles' Ann. Civ. St. 1914, art. 6394f, be read into bond or not.

5. **Highways ⬧⟹113(5)—Statutes governing contractors' bonds to pay for labor, material, etc., liberally interpreted.**

Statutes like Vernon's Sayles' Ann. Civ. St. 1914, art. 6394f, governing road contractors' bonds to pay for labor, materials, etc., must be liberally interpreted.

6. **Highways ⬧⟹113(5)—Stock feed furnished teamsters held "materials that are required to complete the work indicated" within contract and bond to pay for such materials.**

Stock feed furnished to teamsters employed in road construction *held* material used in prosecution of work within contract and bond to pay for labor, materials, etc.; wording of contract "materials that are required to complete the work indicated" being broad enough to cover, not only those actually entering into construction, but all that are helpful, needful, etc., in completing work.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Materials.]

7. **Pleading ⬧⟹352—Variance between pleading and proof, requiring that intervention be summarily stricken, held not indisputably shown.**

Where there was evidence that intervener, in county's suit on road contractor's bond, not only had exclusive possession and control of teams and work thereof, but himself made oral contract with contractor to do such work, for which he sought to recover, no indisputable variance between pleading and proof, requiring that intervention be summarily stricken on surety's motion, was shown.

8. **Highways ⬧⟹113(5)—Instruction that both contractor and surety were liable to intervening laborers and materialmen, if contractor failed to complete road and pay for labor or material, held proper.**

In county's suit on road contractor's bond to pay for labor and materials required to complete work, instruction that, if contractor failed to complete road according to contract and pay off labor or material in completion thereof, both contractor and surety were liable to any one furnishing labor or material, *held* justified by terms of contract and bond, and not erroneous as relieving intervening laborers and materialmen from burden of proving their right to recover and amount of their claims, though peremptory, on matter of defendants' liability.

9. **Appeal and error ⬧⟹1050(1), 1060(1)—Evidence and counsel's discussion, of compromise judgment for county against contractor and surety, held not ground for reversal of judgment against them for intervening laborers and materialmen.**

In county's suit on road contractor's bond, where court correctly instructed jury that defendants' contractor and surety were liable for all labor and material required to complete road, evidence of intervening laborers and materialmen as to controversy between county and defendants and compromise judgment for county, and counsel's discussion of effect of such settlement on defendants' liability, concerned immaterial matters not so important as to require reversal of judgment for interveners against defendants.

10. **Appeal and error ⬧⟹362(2)—Assignment of error in admission of evidence and argument of counsel overruled, where application for writ does not show objections made.**

Where application for writ of error nowhere shows what objections were made to admission of evidence and argument of counsel, assignment of error therein must be overruled.

⬧⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*See opinion on rehearing 276 S. W. 1119.

**11. Principal and surety ⬤═100(6)—Contract between county and road contractor to extend road into city held not novation releasing surety on contractor's bond.**

Contract between county and road contractor to construct road within city limits *held* not novation of original contract, releasing surety on contractor's bond, but contract for additional work entirely beyond and unconnected with that originally contemplated, though for similar work on extension of same road on same basis and terms as original contract.

**12. Principal and surety ⬤═100(6)—Agreement for additional work is independent contract not constituting material alteration of original.**

Agreement between principal parties to contract for additional work, not included in original contract, is independent contract not constituting material alteration of original, so as to release surety on contractor's bond.

**13. Highways ⬤═113(5) — Disallowance of claims against contractor and surety for grocery bills as not within rule of necessity held not error.**

Disallowance of claims against road contractor and surety for grocery bills incurred in feeding laborers as not brought within rule of necessity by pleadings or evidence *held* not error, in absence of statement from record in application for writ showing misapplication of rule.

**14. Appeal and error ⬤═297 — Overruling of cross-assignments of error on rehearing, after sustaining them on original hearing, not considered in absence of motion for rehearing by parties assigning them.**

In absence of motion for rehearing in Court of Civil Appeals by interveners assigning error in overruling their cross-assignments of error on rehearing, after sustaining them on original hearing, Commission of Appeals cannot consider matters complained of.

**15. Appeal and error ⬤═297—Motion for rehearing in Court of Civil Appeals must be predicated on judgment deciding matters complained of to be considered in Supreme Court.**

Motion for rehearing in Court of Civil Appeals must be predicated on judgment actually deciding matters complained of to be considered in Supreme Court.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Action by Henderson County against the United States Fidelity & Guaranty Company and another, in which A. W. Perdue and others intervened. Judgment for interveners in part was affirmed in part, reversed in part, and in part reversed and remanded by Court of Civil Appeals (253 S. W. 835), and defendants bring error. Affirmed.

E. A. Landman, of Athens, for plaintiff in error La Rue & Barron Co.

Miller & Miller, of Athens, for plaintiff in error Williams, Burk & Co.

Seay, Seay, Malone & Lipscomb, of Dallas, for other plaintiffs in error.

Phillips, Townsend & Phillips, of Dallas, for defendant in error.

SPEER, J. Henderson county instituted this suit against Williams, Burk & Co., contractors, and their surety, the United States Fidelity & Guaranty Company, upon a certain road building contract and bond, and a number of persons furnishing labor and material for the improvements constructed intervened. The suit by the county was predicated upon the theory that the contractors had breached their contract and the county had been compelled to take over and finish the work. Before the trial, the contractors and the surety company settled the claim of the county under a compromise agreement, paying to the county $8,000, and a judgment embodying the agreement was duly entered. The case thereafter proceeded to trial with the interveners as plaintiffs. From the judgment rendered by the trial court, the contractors and the surety company appealed and the interveners filed cross-assignments in numerous respects.

The Court of Civil Appeals affirmed in part, reversed in part, and in part reversed and remanded. The cause is before us upon writs granted respectively to the surety company, the contractors, and the interveners. A very full statement of the case is made by the Court of Civil Appeals. 253 S. W. 835.

[1] The writer did not have the benefit of oral arguments in the submission of this case, but the points involved have been so thoroughly briefed by the respective counsel that it is highly improbable any point has been overlooked. We will, of course, confine our discussion to the points assigned as error and are not called upon to discuss all of the questions presented to, and decided by, the Court of Civil Appeals.

At the threshold of the consideration we must determine whether or not the bond sued upon is void as for duress under compulsion of article 5623a, Vernon's Civil Statutes Supp. 1918. It is contended by the surety company that its bond was executed solely under the authority of this statute and the requirement of the county that its terms be complied with. This statute having been held to be void as in contravention of the Constitution (Williams v. Baldwin [Tex. Com. App.] 228 S. W. 554), the insistence is that the bond given in obedience to its requirement is likewise void. The contract between the county and the contractors stipulated:

"The contractor shall file a guaranty of his faithful performance of said contract, a good and sufficient bond in compliance with article 5623a, Senate bill No. 79, c. 143, of the Thirty-Fourth Legislature 1915, which requires that the contracts less than $1,000 a bond for full amount of contract be given, for those over

---

⬤═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

$1,000 and not over $5,000, three-quarters of contract price, and those over $5,000 and not over $100,000, one-half contract price, those over $100,000 one-third contract price be given. Said bond to be furnished by a surety company authorized to do business in the state of Texas or responsible persons acceptable to party of the first part."

There was much evidence tending to show that all parties to the contract and bond considered article 5623a as applicable and that the bond was executed in compliance with its terms. The Court of Civil Appeals, in disposing of this contention, thought it clearly appeared that article 6394f of the statute was meant, since that article alone has relation to public contracts, and therefore disregarded all reference to article 5623a and construed the contract and bond in the light of article 6394f. This last article, which is especially applicable to contracts with the state, its counties, school districts, or other subdivisions thereof, for the construction of public works, provides:

That any person, firm, or corporation entering into such contract shall "before commencing such work to execute the usual penal bond, with good and sufficient sureties, with the additional obligation that such contractor or contractors shall promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work provided for in such contract."

The bond actually executed was as follows:

"Contractors' Bond. Know all men by these presents: That we, Williams, Burk & Co., of Jacksonville, Cherokee county, and state of Texas, principal, and United States Fidelity & Guaranty Company of Baltimore, Md., as surety, are held and firmly bound unto the county of Henderson, state of Texas, in the penal sum of forty-three thousand two hundred twelve and 32/100 dollars ($43,212.32) lawful money of the United States, to be paid to said county or to its certain attorneys or assigns, for which sums of money, well and truly to be paid, we bind ourselves, our heirs, successors, executors, and administrators, jointly and severally, firmly by these presents.

"Sealed with our seals and dated this eighth day of January, A. D. 1920.

"The condition of this obligation is such that if the said bounden principal, Williams, Burk & Co., shall in all things well and truly perform all the terms and conditions of the aforegoing contract, to be by them/him performed, and within the time therein mentioned, and shall pay all lawful claims for labor performed in and about the construction of said road bridge, and shall have paid and discharged all liabilities for injuries which have been incurred in and about the said construction, under the operation of the statutes of the state, then this obligation is to be void; otherwise to be and remain in full force and virtue."

[2] It cannot be denied that a bond executed solely by authority of a void statute to secure a right which the maker would otherwise have without such execution is void as for duress; but the bond in the present case cannot be avoided upon this ground. Before the bond could be thus avoided, it would have to appear that it was executed solely upon the compulsion of the void statute and that the rights secured thereby rightfully belonged to the maker without such compliance; in other words, that the sole consideration for executing the bond was the void statute.

[3] In the view we take of the matter, it is immaterial whether the parties mistakenly thought article 5623a was applicable to the situation or not. It is clear that, by reason of the express requirements of article 6394f, there was ample valid authority requiring the contractor to execute a bond conditioned for the payment of labor and materials, so that there existed imperative authority for the execution of the bond in controversy entirely aside from the requirements of article 5623a. In truth, under the terms of article 6394f, the contractors could not lawfully proceed with their work until they had executed a bond in compliance with its terms. It cannot be said, therefore, that the bond depends in anywise upon the validity of article 5623a, for in truth it does not. Moreover, it is not necessary for us to hold that article 6394f will be read into the contract whether the parties intended to execute thereunder or not, since we are of the opinion the terms of the bond actually executed are sufficient to make the surety company liable for all the demands upon which it has been held. The authorities cited by this plaintiff in error are not at all decisive in its favor, but are all explicable and in keeping with the principle we have just announced. In Shaughnessy v. American Surety Co., 138 Cal. 543, 69 P. 250, 71 P. 701, where an instrument executed under a void statute was held to be void, the court, in declining to uphold the bond as a common-law obligation, was particular to say:

"It is not the case where a valid statute requires a bond and the bond given is defective. It is a case where the statute requiring the bond is itself unconstitutional because of this exaction."

Here, as we have shown, this is a case where a valid statute requires the bond. So, in City of Cleveland v. Clements Bros., 67 Ohio St. 197, 65 N. E. 885, 59 L. R. A. 775, 93 Am. St. Rep. 670, cited by plaintiff in error, the court held void certain stipulations or agreements inserted in a contract where "the obligatory and binding force of such stipulations and agreements so inserted depends upon the validity of the statute requiring their insertion," and where such statute is itself unconstitutional. Here, of course, the validity of plaintiff in error's bond does not depend at all upon the validity of article 5623a, but is otherwise supported, and even required, by a valid statute. Again, in Southern Surety Co. v. Nalle & Co. (Tex.

Com. App.) 242 S. W. 197, cited by plaintiff in error, it is said:

"There is nothing in the record·showing or tending to show that the owners in taking this bond were constrained to do so *solely* by virtue of said· statutes or that any of its terms or conditions were demanded by the owners *solely* by reason thereof. * * * Where a bond is wrongfully demanded under color of official authority or as a condition to some act, privilege, or benefit to which the maker is entitled *without giving any bond* [italics ours], such bond, if given, will be held to be void for duress."

Now, clearly the bond in the instant case was not required solely by virtue of the void statute, and equally clearly the contractors and the surety company were not entitled to proceed with the undertaking in hand "without giving such bond." It would be an anomalous situation for the court to hold that the bond executed· in this case in accordance with the requirements of a valid statute must be held to be absolutely void because forsooth another article thought by the parties to be applicable is itself void upon constitutional grounds. We are not willing to go to this length.

[4] It is next insisted that, since the bond actually executed does not stipulate for the payment of claims for materials furnished under the contract, the surety company is not liable for such claims. If the parties executed the bond intending to comply with article 6394f, then, of course, the terms of that article will become a part of the contract, incorporated into it. Trinity Portland Cement Co. v. Lion Bonding & Surety Co. (Tex. Com. App.) 229 S. W. 483. But we need not base our holding upon this principle. As will be seen from an inspection of the bond already set out, it is conditioned that the principal, Williams, Burk & Co., "shall in all things well and truly perform all the terms and conditions of the aforegoing contract." Now, one condition of the contract is:

"The agreement covering the performance of the work. It shall include the plans and specifications and shall be held to cover any or all work, labor, implements, machinery, equipment, and materials that are required· to complete the work indicated in a proper and satisfactory manner."

It is thus seen that the terms of the contract are made part of the undertaking of the bond, and, when the bond is construed in the light of the contract which it secures, it obligates the makers, not only for all work, labor, implements, machinery, and equipment, but for all materials as well that are required to complete the work indicated. It is not so much, therefore, a reading of the statute into the bond as it is a matter of plain meaning of the bond when read in connection with the contract which it secures. When thus read, it specifically undertakes to guarantee the payment for materials required to complete the work.

[5, 6] The contention is pressed that the Court of Civil Appeals erred in holding that stock feed to those furnishing teams to do work upon the construction constituted material used in the prosecution of the work. But in this holding there was no error. It is a principle of universal application that statutes such as the one governing bonds like this are to receive a liberal interpretation. Furthermore, the wording of the contract secured by the bond, to wit, "materials that are required to complete the work indicated," is broader than the rule contended for by plaintiff in error that the right to recover for materials furnished· is limited to those materials that actually enter into the construction; rather, it is broad enough to cover all materials that are required to complete the work —that is, helpful, needful and the like. A quotation made by the Court of Civil Appeals from Brogan v. National Surety Co., 246 U. S. 257, 38 S. Ct. 250, 62 L. Ed. 703, L. R. A. 1918D, 776, so aptly illustrates the rule that we ourselves quote it:

"The Circuit Court of Appeals deemed immaterial the special circumstances under which the supplies were furnished and the findings of fact by the trial court that they were necessary to and wholly consumed in the prosecution of the work provided for in the contract and bond. In our opinion these facts are not only material, but decisive. They establish the conditions essential to liability on the bond. The bare fact that the supplies were furnished to the contractor and were consumed by workmen in its employ would have been immaterial. A boarding house might be conducted by the contractor (like some company stores concerning which states have legislated [Keokee Consol. Coke Co. v. Taylor, 234 U. S. 224, 58 L. Ed. 1288, 34 S. Ct. 856]) as an independent enterprise, undertaken solely in order to utilize the opportunity for separate and additional profit afforded by the congregation of many laborers in the particular locality where the public work is being performed. The laborers might resort to such a boarding house in the exercise of individual choice in the selection of an eating place. Under such circumstances the furnishing of supplies would clearly be a matter independent of the work provided for in the contract, and would not entitle him who had furnished the groceries used in the boarding house to recover on the bond. But here, according to the undisputed facts and the findings of the trial court, the furnishing of board by the contractor was an integral part of the work and necessarily involved in it. Like the supplying of coal to operate engines on the dredges, it was indispensable to the prosecution of the work, and it was used exclusively in the performance of the work. Groceries furnished to a contractor under such circumstances and consumed by the laborers are materials supplied and used in the prosecution of the public work. The judgment of the Circuit·Court of Appeals is therefore reversed and that of the district court affirmed."

To the same doctrine are: United States v. Lowrance, 252 F. 122, 164 C. C. A. 234; City of Portland v. New England, etc., Co., 96 Or. 48, 189 P. 211; Carter County v. Oliver Hill Const. Co., 143 Tenn. 649, 228 S. W. 720; Bricker v. Rollins & Jerecki, 178 Cal. 347, 173 P. 592.

[7] It is still insisted, as it was in the Court of Civil Appeals, that there was a fatal variance between the pleading and the proof in the matter of the intervention of A. W. Perdue. This intervener's pleading sought to recover upon a contract between himself and the contractors. It is urged that the proof indisputably showed that Perdue had no contract, but that he was merely an employee of B. B. Johnson, the owner of the teams, who did have a contract for the work. The question arose in the trial court after the evidence was in upon the surety company's motion summarily to strike out the intervention. This motion, of course, could only have been granted if the evidence were in such shape as indisputably to show a variance. This cannot be said to be the case. We have examined the testimony far enough to see that there was evidence at least tending to show, not only that Perdue had for the time being the exclusive possession and control of the teams and work, but likewise to show that he himself made the contract, which was an oral one, with the contractors. This being true, the surety company was not entitled to the summary action of striking out the intervener's plea.

[8] Upon the trial, the court instructed the jury:

"You are charged that the contract introduced in evidence, signed by the county and Williams, Burk & Co., and the bond made by the United States Fidelity & Guaranty Company, is such a contract and bond as a cause of action can be maintained upon, and that, if Williams, Burk & Co. failed to complete the road in accordance with such contract or failed to pay off the labor or material in the completion of such road, both Williams, Burk & Co. and the surety company are liable to any party furnishing labor or material for building or constructing such road."

This charge is criticized because it authorized and instructed the jury to return a verdict in favor of interveners if they really found that Williams, Burk & Co. failed to complete the road and was therefore in effect a peremptory charge for the interveners. It is true the charge in effect is peremptory on the matter of the liability of the defendants. In view of our construction of the contract and bond, the trial court was eminently justified in giving this instruction, and it does not have the effect to relieve the interveners from the burden of proving their right to recover and the amount of their claims respectively.

[9, 10] What we have just said likewise answers the next contention of plaintiff in error to the effect that it was error to permit interveners to introduce evidence with reference to the controversy between Henderson county and the defendants, and especially the compromise judgment whereby the county recovered $8,000 upon settlement, and for counsel to discuss in the presence of the jury the effect of such settlement upon the question of the defendants' liability. Since the trial court, as we have held, correctly instructed the jury that defendants were liable for all labor and material required to complete the construction of the road, it is obvious the matters here discussed were wholly immaterial, the nature of which is not of such importance as to require a reversal of the court's judgment. In this respect, the only real issues were the character of service or material furnished and the amount thereof. Furthermore, we overrule the assignment concerning all these matters, because the application for a writ nowhere shows what objections were made by counsel for defendants, so that the precise ruling complained of is not before us.

[11] Finally, it is urged there has been such a novation in the contract as to release the surety company. During the progress of the trial and after the introduction of evidence which was thought to raise the issue, the surety company, with leave of the court, filed a trial amendment, pleading a novation of the contract without its consent, whereby it claimed its release from the bond. At the conclusion of the testimony, the surety company requested a peremptory instruction, which was refused, and the court submitted a special issue as follows:

"Did Henderson county make a separate contract with Williams, Burk & Co., to do work in the corporate limits of the town of Athens, or was such contract to do the work in the town of Athens a continuation of the original contract so made between the commissioners' court and Williams, Burk & Co.? You will answer this a new contract or a continuation of the old contract as you may find from the evidence."

The submission of this issue was objected to, because under the undisputed evidence it was a question of law for the court to pass upon, but the objections were overruled, and the jury answered that the county made a separate contract with the contractors to do the work in the corporate limits of the city of Athens, and the court entered judgment accordingly. We are inclined to agree with plaintiff in error that under the undisputed evidence it became a question of law for the court whether or not there had been a novation of the original contract by reason of the agreement between the parties to construct a road within the corporate limits of the city of Athens. But we are further of the opinion, under the undisputed evidence, the agreement was in no just sense an alteration

of the original contract, but was only a contract for additional work entirely beyond, and in nowise connected with, the work originally contemplated. None of the rights, duties, or obligations of any of the parties to the original contract was in any way increased, diminished, or affected whatever.

[12] The fact that the additional contract was for similar work upon an extension of the same road and upon the same basis and terms of the original contract does not affect the question. It nevertheless was an independent contract for additional work and in nowise relieved the surety company of liability on the original undertaking. The authorities seem to be uniform to the proposition that, where the principal parties to a contract enter into an agreement for additional work not included in the original contract, such agreement is an independent contract and does not constitute a material alteration of the original contract. Thompson v. Kleinman (Tex. Civ. App.) 259 S. W. 593; United States Fidelity, etc., Co. v. American Blower Co., 41 Ind. App. 620, 84 N. E. 555; Fullerton Lumber Co. v. Gates, 89 Mo. App. 201; Hayden v. Cook, 34 Neb. 670, 52 N. W. 165; Fitzpatrick v. McAndrews, 12 Pa. Co. Ct. R. 353.

This disposes of all assignments of error of plaintiff in error United States Fidelity & Guaranty Company, and likewise necessarily disposes of all assignments of error by plaintiff in error Williams, Burk & Co., since their application appears to be identical with that of plaintiff in error United States Fidelity & Guaranty Company.

[13] There remains only to be considered the points raised by plaintiffs in error, the interveners: First, these plaintiffs in error complain that the Court of Civil Appeals erred in reversing the trial court in overruling exceptions to the pleas of intervention with respect to grocery bills claimed by certain of them. The trial court permitted a recovery of such items and the Court of Civil Appeals reversed this part of the judgment, upon the ground that neither the pleadings nor the evidence brought these items within the rule of necessity as set forth in Brogan v. National Surety Co., already referred to in this opinion. We approve the principles announced in that decision and the application for writ contains no statement from the record to show that the court misapplied them either as to the pleadings or the evidence.

[14, 15] The remaining assignments by the interveners all relate to the action of the Court of Civil Appeals in overruling various cross-assignments of error presented by the interveners. On the original hearing, the Court of Civil Appeals sustained these cross-assignments, and only on a rehearing did that court make its order overruling them. No motion for rehearing was made in the Court of Civil Appeals by the interveners, and in this state of the record we are without authority to consider the matters complained of. It is well settled generally that the Supreme Court will not consider errors not properly assigned in the motion for rehearing in the Court of Civil Appeals, and express application of this rule has been made where the supposed error was committed, not upon the original hearing, but upon a rehearing in the Court of Civil Appeals. The motion for rehearing to form the basis for a consideration in the Supreme Court must be predicated upon the judgment of the Court of Civil Appeals actually deciding the matters complained of. In Roth v. Murray, 105 Tex. 6, 141 S. W. 515, Mr. Justice Ramsey for the Supreme Court said:

"The first rule for this court (67 S. W. 11) provides, among other things, that 'a motion for rehearing must be made in the Court of Civil Appeals and overruled before applying for the writ of error, and, further, that the petition for writ of error shall include 'specific assignments of error confined to the points of law presented in the motion for rehearing in the Court of Civil Appeals.' In the light of these provisions it seems to us that in order to present the case properly to this court it was not only proper, but required, that relators should have filed their second motion for rehearing. This was, in effect, ruled in the case of Knox v. McElroy [103 Tex. 357] 127 S. W. 798, where it was held that where the Court of Civil Appeals had stricken out the statement of facts, and thereupon affirmed the judgment, and thereafter rescinded its order striking out such statement, and decided the case on the merits, with the same result, assignments, to be reviewable, must be raised by motion for rehearing in the Court of Civil Appeals."

This decision and the one cited are conclusive against our authority to consider the question presented.

We find no error in the judgment of the Court of Civil Appeals, and recommend that it be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.