UNITED STATES of America,
Plaintiff,

v.

Troy SIMPKINS, d/b/a Lamar Oil Company, Commercial Standard Insurance Company, E. B. Long and O. N. Pederson, Defendants.

Civ. A. No. 465.

United States District Court,
E. D. Texas,
Paris Division.

June 10, 1970.

Roby Hadden, U. S. Atty., Tyler, Tex., for plaintiff.

Durwood D. Crawford, Seay, Gwinn & Crawford, Dallas, Tex., for defendant Commercial Standard Ins. Co.

J. D. McLaughlin, Fisher, McLaughlin & Harrison, Paris, Tex., for defendant Troy Simpkins.

Foster T. Bean, Bean, Ford, Schleier & Dickerson, Kilgore, Tex., for defendant O. N. Pederson.

## MEMORANDUM OPINION

FISHER, Chief Judge.

Defendants Commercial Standard Insurance Company and O. N. Pederson have each filed Motions for summary judgment in this cause. The Motions are based upon the pleadings, affidavits and interrogatories on file herein.

On January 20, 1964, Troy Simpkins and E. B. Long, dba Lamar Oil Company, a partnership engaged in the distribution of oil and gas products, issued a gasoline and lubricating oil bond to the United States. Defendant Commercial Standard Insurance Company was surety on the bond, which was to continue in force from its date until cancelled. Defendant O. N. Pederson, a former owner of Lamar Oil Company, as an inducement to Commercial Standard to issue the bond, gave the latter an indemnity agreement for bonds issued in behalf of Lamar Oil Company which ran in favor of "any and all obligees." The bond was filed in compliance with former sec. 4101 of the Internal Revenue Code of 1954, requiring that such a bond be posted by producers and importers of gasoline and lubricating oil before commencing operations. The bond form was furnished by the Internal Revenue Service.

In 1965 sec. 4101 of the Code was amended by sec. 802(b) (2) of the Excise Tax Reduction Act so as to eliminate the requirement that such a bond be furnished and also to provide that the surety companies which were liable on bonds in effect on July 1, 1965, for taxes incurred before that date would not be liable for taxes accruing thereafter. Subsequently the IRS issued a "technical information release" advising that no further requirement with respect to such bonding existed after July 1, 1965, a true copy of which was admittedly received by Commercial Standard and by Lamar Oil Company.

In January, 1966, the bond here in question was subject to renewal as between the principals, and a premium entry was made reflecting payment thereof by Troy Simpkins, dba Lamar Oil Company. The bond was renewed in the same manner in 1967.

During August, 1965, the partnership composed of Troy Simpkins and E. B. Long, dba Lamar Oil Company, was dissolved. Troy Simpkins continued to do business in the name of Lamar Oil Company.

Troy Simpkins, dba Lamar Oil Company, became indebted to the United States for excise taxes under secs. 4081 and 4091 of the Code, and for penalties and interest, during the first and second quarters of the calendar year 1966. That indebtedness is the basis of this lawsuit. The IRS made a demand upon Commercial Standard on December 27, 1966, and the following day the insurer sent its notice of cancellation by certified mail and refunded the premiums paid for the year 1966 to Troy Simpkins, dba Lamar Oil Company.

Commercial Standard asserts that it is not liable in this instance because the assessments in question run to Troy Simpkins individually while the bond covered only the partnership which was dissolved in 1965. The Government argues that Commercial Standard had notice of dissolution of the partnership and was directed by Simpkins to make the bond out in the name of Simpkins individually when it was "renewed" in 1966. Simpkins admits that he told Commercial Standard's agent of the dissolution of the partnership and instructed him to change Lamar Oil Company's outstanding policies accordingly. There is attached to the "cross interrogatories" of Defendant O. N. Pederson to Troy Simpkins a copy of a special endorsement, effective as of August 13, 1965, amending the named insured to read "Troy L. Simpkins, dba Lamar Oil Company." Simpkins stated that the original of this document was delivered to him by Commercial Standard's agent. It thus appears likely that, as the Government maintains, the sub-

sequent issuance of the bond in the name of the dissolved partnership was a "formal error" of Commercial Standard's agent. The Government argues that the Court should look beyond the form to the intent of the parties for the substance of the agreement and give effect to its true purpose and intent—to insure payment to the excise tax.

The Government takes the position that since the bond application and the bond itself specify that the purpose of its execution was to protect the United States, the Government is clearly a third party to be benefited by the same. "When a principal enters into a contract with a surety for the benefit of a third party, a third party beneficiary relationship has been established if this is the intent of the parties." Plaintiff's Memorandum, p. 5. Once such a contract has been accepted by the third party it cannot be modified or rescinded without his consent.

Commercial Standard argues on the contrary that the repeal of the statute requiring such bonds prior to the accruing of the tax liability in question terminates its liability on the bond and the Government cannot now assert such liability on a common law theory. It is maintained that the Internal Revenue Service is not a creditor beneficiary because after July 1, 1965, Troy Simpkins owed no legal duty to keep the bond in force for its benefit; and neither can IRS be regarded as a donee beneficiary because there was no intent to provide it with a gift. The Government can only be regarded as a "volunteer."

■ The Government does not dispute the rule that a statutory bond is no longer in force or valid after the repeal of a statute or if the statute is declared unconstitutional, Massachusetts Bonding and Insurance Co. v. McKay, 10 S.W.2d 770 (Tex.Civ.App.—Austin, 1928 writ ref'd), but contends that such a bond may be nonetheless enforceable as a common law obligation. The clear question thus presented is whether Commercial Standard and Troy Simpkins could mutually rescind the bond ef-

fective July 1, 1965, and whether the Government has standing as either a donee or creditor beneficiary to complain of such action.

■ It is standard contract law that an executory contract may be annulled by the principal parties' recission or mutual release of their obligation thereunder before the third party accepts the promise made in his behalf or changes his position in reliance thereon. In this case the Government undertook to "accept" the promise by demanding payment on December 27, 1966, the day before Commercial Standard posted its notice of cancellation. Such formal acceptance would ordinarily be sufficient. 13 Tex.Jur.2d, Contracts § 353. The situation is complicated, however, by the fact that the Government has previously declined to accept the benefits of the contract. Subsequent to the repeal of the statutory requirement in 1965, the IRS stated in its technical information release of October 12, 1965:

"Those bonds in existence on July 1, 1965, in respect of gasoline and lubricating oil tax liability for periods prior to that date, are not to be treated as applying to the tax liability for such products sold on or after July 1, 1965. * * *"

As a matter of standard contract law, an offer once rejected cannot thereafter be revived by tendering an acceptance thereof. 13 Tex.Jur.2d, Contracts § 35.

■ However, the Government maintains that the contract was "renewed" by payment of the 1966 premiums with an intent to benefit the IRS. Defendants counter with the argument that the premium payments are without significance in this respect because by its own terms the bond in question provided for continuous liability and not for liability for a certain term. Under the contract the surety's liability continues until the prescribed notice of termination is given, regardless of whether the insured has discharged his contractual obligations. Thus it would seem that the contractual liability of Commercial

Standard, if any, has its inception in the bonding agreement which was filed in 1964 pursuant to the Internal Revenue Code and Regulations. It would seem to follow that the "intent" of the parties (Commercial Standard and Troy Simpkins) in keeping in effect the bonding agreement is not a material consideration. Rather the bond was merely a statutory bond, and one which the Government has announced it will no longer require or look to for protection of its own interests. To permit the Government now to change its position and to exact the benefits of this bonding agreement would do violence to considerations of sound public policy.

 There is another reason why this bond can have no "common law" vitality. A common law bond is an obligation knowingly incurred in order to obtain some right or benefit to which the principal would not otherwise be entitled. In U. S. Fidelity & Guaranty Co. v. Henderson County, 276 S.W. 203, 205 (Tex.Sup.1925), the Court said:

> "It cannot be denied that a bond executed solely by authority of a void statute to secure a right which the maker would otherwise have without such execution is void as for duress; * * * Before the bond could be thus avoided it would have to appear that it was executed solely upon the compulsion of the void statute and that the rights secured thereby rightfully belonged to the maker without such compliance; in other words, that the sole consideration for executing the bond was the void statute."

 It is the rule that there must be consideration for the bond in that the principal obtains some benefit therefrom. Here the continuous bond, entered into prior to the repeal of the statute which made it obligatory, would be determined by repeal of the statute unless the parties voluntarily undertook to keep it in force for some purpose. It is apparent that Simpkins did not obtain any benefit or achieve any purpose by keeping the bond in force after July 1, 1965. The proposition that he intended gratuitously to benefit the Internal Revenue Service is so implausible as not to raise an issue of fact in the case.

Accordingly, we conclude that Commercial Standard's motion for summary judgment can be determined upon the pleadings, affidavits and interrogatories before the Court, and that the same should be granted. It follows that the motion of O. N. Pederson, Commercial Standard's indemnitor, should likewise be granted. Counsel for these Defendants will submit an appropriate order within fifteen days.