## SMITH v. FIDELITY & DEPOSIT CO. OF MARYLAND. (No. 585–4407.)*

(Commission of Appeals of Texas, Section B. Feb. 10, 1926.)

1. **Waters and water courses** 228½, New, vol. 10A Key-No. Series—**Bond to guarantee subcontractor's performance in constructing irrigation ditch carried statutory obligation of surety, where party so intended (Complete Tex. St. 1920 or Vernon's Sayles' Ann. Civ. St. 1914, art. 6394f).**

Where parties to bond to guarantee subcontractor's performance in constructing irrigation ditch intended provisions of Complete Tex. St. 1920 or Vernon's Sayles' Ann. Civ. St. 1914, art. 6394f, requiring contractors with state to give bond, to be part of surety's obligation, such would be the effect, since written instruments are construed according to intention of parties.

2. **Waters and water courses** 228½, New, vol. 10A Key-No. Series—**One furnishing supplies to subcontractor's employees constructing irrigation ditch held entitled to sue on subcontractor's bond.**

Where bond secured performance of contract for construction of irrigation ditch between original contractor and subcontractor, and separate sections of contract and bond provided for protection of materialmen, one furnishing groceries, merchandise, and feed to subcontractor's employees could recover on bond; such separate section being obviously intended to give him such relief.

3. **Waters and water courses** 228½, New, vol. 10A Key-No. Series—**No lien in favor of materialmen or laborers on public works.**

One furnishing materials to subcontractor's employees constructing irrigation ditch would have no lien, since there is no lien in favor of materialmen and laborers where work contracted for is public work.

Error to Court of Civil Appeals of Second Supreme Judicial District.

Action by J. S. Smith against the Fidelity & Deposit Company of Maryland. Judgment for plaintiff was reversed by the Court of Civil Appeals and judgment rendered for defendant (270 S. W. 1071), and plaintiff brings error. Reversed.

Fischer & Fischer, of Wichita Falls, for plaintiff in error.

Albert B. Hall, of Dallas, for defendant in error.

SPEER, J. This is a suit prosecuted by plaintiff in error against defendant in error as surety upon a bond given by W. E. Cecil to guarantee the faithful performance of his contract with W. E. Callahan Construction Company, whereby he subcontracted to perform a certain part of a parent contract between the construction company and Wichita county water improvement district No. 1 to construct certain irrigation ditches in Wichita and Archer counties. The trial court rendered judgment in favor of the plaintiff, but upon appeal by the surety company, the Court of Civil Appeals reversed that judgment, and rendered one in favor of the appellant. 270 S. W. 1071. We think the judgment of the Court of Civil Appeals is wrong, and should itself be reversed.

The ruling of both courts turned upon their respective interpretations of defendant in error's bond. It is as follows:

"State of Texas, County of Wichita:

"Know all men by these presents that, whereas, on the 2d day of February, A. D. 1922, W. E. Cecil, of Duncan, Okl., made and entered into a written contract with the W. E. Callahan Construction Company, wherein the said W. E. Cecil undertook the full performance of a certain contract made and entered into by the W. E. Callahan Construction Company with the Wichita county water improvement district No. 1, of Wichita county, Tex., in so far as said contract related to certain items, particularly mentioned in schedule 3, item 1, miles 15, 16, 17 of the plans, specifications, and general instructions thereto attached and marked Exhibit A, to which contract and exhibit reference is here made for a more particular description.

"And, whereas, in said contract the said W. E. Cecil contracted and agreed to execute and deliver a good and sufficient bond, payable to said Wichita county water improvement district No. 1, Wichita county, Tex., and the W. E. Callahan Construction Company in the sum of eight thousand and no/100 dollars at the city of Wichita Falls, Tex., conditioned on the full and faithful performance of said contract and the payment by the said W. E. Cecil of the sums of money due and to become due, for supplies, teams, equipment, material, and

---

For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Rehearing denied March 17, 1926.

labor used, or contracted to be used, in the performance of said agreement, as well as any and all other expense incurred in the performance or attempted performance thereof:

"Now, therefore, know all men by these presents, that W. E. Cecil, as principal, and Fidelity & Deposit Company of Maryland, as surety, jointly and severally hereby acknowledge themselves and each of them jointly bound and obligated to pay to the said Wichita county water improvement district No. 1 of Wichita county, Tex., and the said W. E. Callahan Construction Company, jointly and severally, the sum of eight thousand and no/100 dollars at the city of Wichita Falls, Tex., in good and lawful money of the United States of America.

"Now, the condition of this bond and undertaking is such that if the said W. E. Cecil shall fully and faithfully perform its said agreement, of date the 2d day of February, 1922, and said original contract executed by W. E. Callahan Construction Company with said Wichita county water improvement district No. 1, in so far as they relate to the items mentioned in schedule 3 of exhibit A attached to each of said contracts, to which exhibit reference is here made for a more particular description of said items, and if the said W. E. Cecil shall pay all sums of money due, and to become due, for supplies, teams, equipment, material, and labor used, or contracted to be used in the performance of said contract, as well as any and all other expense incurred in the performance or attempted performance thereof, then this bond or undertaking shall become null and void; otherwise it shall remain of full force and effect."

The subcontract, for the performance of which the bond in suit was executed, contained the following provisions:

"Party of the second part further contracts and agrees to forever protect and save party of the first part and its successors and assigns harmless from any and all loss, cost, or expense, including its reasonable attorneys' fees, resulting or that may be claimed to have resulted, from the manner in which and means by which this contract is performed. * * *

"Party of second part further contracts and agrees to perform said contract in a good and workmanlike manner, and to complete the same within the time herein mentioned, and in the manner specified in the original contract, made and entered into by party of first part with said water improvement district; and further agrees that this contract shall not be considered as having been duly performed until any and all work done thereunder has been finally accepted by said water improvement district, and the party of first part finally released and discharged from any and all liability under said original contract, in so far as it relates to the items embraced in schedule 3 hereinabove particularly mentioned.

"Party of second part further contracts and agrees that this agreement shall not take effect until the party of second part shall have executed and delivered to party of first part a good and sufficient bond in a sum equivalent to fifty per cent. (50%) of the aggregate amount to become due and payable to party of second part, hereunder, signed by good and solvent surety company, acceptable to party of first part, and payable to said water improve-

ment district No. 1, and party of first part at Wichita Falls, Wichita county, Tex., conditioned upon the full and faithful performance of this agreement, and of said original contract, executed by party of first part, in so far as it relates to the items in schedule 3 hereinabove mentioned, and that the party of second part will pay all sums of money due, and to become due, for supplies, teams, equipment, material, and labor used, or contracted to be used, in the performance of this agreement, as well as any and all other expenses incurred in the performance or attempted performance thereof. * * *

"It is expressly stipulated and agreed that this contract and no part thereof shall not be transferred, assigned, or sublet by party of second part to any person or corporation, whomsoever, without the written consent of party of first part; and that no part of any money or moneys that shall become due and payable to party of second part hereunder shall be transferred, assigned, or hypothecated without such written consent.

"It is further stipulated and agreed that this contract shall not become effective or binding upon either party hereto until the same shall have been approved by said Wichita county water improvement district No. 1, as evidenced by its written indorsement hereon."

[1] Plaintiff in error presents three assignments, as follows:

"(1) The Court of Civil Appeals erred in holding that the bond sued on in this cause is not such a bond as is contemplated by article 6394f, Complete Statutes of Texas 1920.

"(2) The Court of Civil Appeals erred in holding that the plaintiff in error is not entitled to maintain this suit on said bond irrespective of article 6394f, Complete Statutes of Texas 1920.

"(3) The Court of Civil Appeals erred in reversing and rendering this cause for the reason that if the petition of the plaintiff in error is not sufficient to sustain the judgment, still it is good against a general demurrer, and the cause should be remanded for another trial."

We sustain plaintiff in error's second assignment of error. Whether or not the bond sued on is such a bond as is contemplated by article 6394f or our statutes or Vernon's Sayles' Ann. Civ. St. 1914, in the sense that Cecil could be compelled to execute it, is entirely immaterial. In order for plaintiff in error to be bound according to the provisions of such article, it is not at all necessary that its bond be other than a conventional bond voluntarily executed by it in such way as to show its intention to make the statute a part of its obligation. No rule is better settled than that written instruments are to be construed according to the intention of the parties thereto. If the parties to this bond intended the provisions of article 6394f to be a part of the surety's obligation, then such would be the effect whether the circumstances were such as to bring the parties within the domain of such statute.

In other words, the liability may as well be voluntary as compulsory.

In Trinity Portland Cement Co. v. Lion Bonding & Surety Co. (Tex. Com. App.) 229 S. W. 483, wherein the court construed a contractor's bond for public bridges within article 6394f of our statutes, it appears the contractor agreed to execute a good and sufficient bond conditioned upon the faithful performance of his contract, so as to cover, also, guaranty that all labor and materialmen's liens shall be paid by the said contractor. But the bond actually executed was conditioned only that—

"The said principal shall well, truly and faithfully comply with all the terms, covenants, and conditions of the said contract on said principal's part to be kept and performed according to the terms thereof."

The court said:

"It is sufficient to say that all parties in any wise connected with the contract were presumed to know the law, and that the instruments above quoted from must be construed together, and be construed also in connection with the statute above cited, which by conclusive implication of law was written into the contract, and became as much a part of the bond as though it were expressed therein, and the bond must be read and understood in the light of it."

That was a suit by materialmen furnishing materials for the work, not, of course, specially named in the bond. See, also, United States Fidelity, etc., Co. v. Henderson (Com. App.) on rehearing, 276 S. W. 1119. The underlying reason for the conclusion of the court in the case quoted is that the parties to the bond, in the light of all the evidence, intended to be bound according to the terms of the statute referred to, and the court is but applying elementary principles when it gives effect to such intention.

In Mosher Mfg. Co. v. Equitable Surety Co. (Tex. Com. App.) 229 S. W. 318, a contractor's bond executed to secure the performance of a contract for public work, was considered. Judge Spencer, for the Commission, said:

"The bond now under consideration was to become void upon the doing of the following things by Kelley: First, that he should faithfully and fully perform and carry out all the things by him agreed to be done in said contract within the time and manner and form as therein set out; second, that he should pay all claims for labor or material used in the construction of said building; and, third, that he should fully indemnify and save harmless Anderson county against all damage and costs which it might suffer or incur by reason of the failure of Kelley to carry out and perform the contract.

"If the only purpose in the insertion of the second obligation was to save the promisee harmless and to indemnify it against loss and damage, then plaintiff in error cannot recover; but, if it was incorporated for the benefit of materialmen and laborers, they may invoke it for their protection.

"The first and third clauses provide for the indemnity to the county and are entirely separate and distinct obligations from the second clause. The absolute independence of the first and third obligations to the second obligation is emphasized in the settlement the county had with defendant in error. * * * The county had its protection, under the first and third clauses, regardless of the second clause, and therefore the second could afford it no protection other than that which flows as a result of the laborers and materialmen being protected. The protection thus afforded materialmen and laborers is, as has been pointed out, a sufficient justification for incorporating such a covenant in the bond."

[2, 3] Materialmen furnishing material for the work were therefore held to be entitled to sue upon the bond. So, in this case, the contract which the bond secures stipulated in separate paragraphs: First, for indemnity to the construction company from all loss, cost, and expenses resulting from the manner in which the contract is performed; and, second, that the subcontractor shall execute and deliver bond conditioned upon the full and faithful performance of this agreement, and of said original contract, and "will pay all sums of money due and to become due for supplies, teams, equipment, material, and labor used or contracted to be used, in the performance of this agreement, as well as any and all other expenses incurred in the performance or attempted performance thereof." The bond executed in accordance therewith has already been set out. The case is therefore very much like the Mosher v. Equitable Surety Co. Case. The work contracted for in both cases being public work, no lien could attach in favor of materialmen or laborers, and there is therefore an important reason and necessity for protecting this class of persons through the medium of the bond, as in the Mosher-Equitable Co. Case. Indemnity and provision for the protection of materialmen are stipulated for in separate sections of the contract and bond, and are therefore treated as different things. The obvious purpose, therefore, of the provision in the contract and bond securing it, was to protect those furnishing supplies, teams, equipment, material, and labor used, in the performance of the contract, "as well as any and all other expenses incurred in such performance." In this connection it is important to consider that Cecil's contract also bound him to assume all of the construction company's liabilities to the improvement district, imposed "by operation of law."

So that, plaintiff in error, as surety for W. E. Cecil, knowing, as it must be held to have known, that its undertaking to guarantee its principal's liability, whether imposed by express agreement or operation of law, contem-

plated the execution of a bond according to the requirements of article 6394f, and therefore actually intended, by the execution of the bond sued on, that the terms of such statute should be a part thereof. Its act could have no other meaning. It knew the terms of the subcontract which it guaranteed; it knew, or should have known, the terms of the original contract between the construction company and the water improvement district; and it necessarily knew the requirement of the law with respect to the obligations imposed upon the construction company, which were being assumed by its principal. Therefore we think the intention of all parties to the bond is such as that it inures to the benefit of plaintiff in error.

But aside from construction, the bond expressly, necessarily, in the light of the contract which it secures, is for the protection of those furnishing supplies, teams, equipment, materials, labor, and the like to be used in the performance of the contract, and this being true, of course, any one of such persons could sue thereon. We have carefully examined the cases of National Bank v. G., C. & S. F. Ry. Co., 66 S. W. 203, 95 Tex. 176, General Bonding, etc., Co. v. Waples Lumber Co. (Tex. Civ. App.) 176 S. W. 651, and Oak Cliff Lumber Co. v. American Indemnity Co. (Tex. Civ. App.) 266 S. W. 429, and are of opinion those cases are clearly distinguishable from the present case; the distinguishing feature being, as expressed in the National Bank v. G. C. & S. F. Ry. Co. Case:

"The character of the instrument as a bond of indemnity to the railroad company is clearly established by the language which precedes that clause, which is, in substance, that the bond is intended and given as additional security to the railroad company for the performance of the contract, and by the clause which immediately follows that relied upon, viz.: 'And also shall well and truly save and keep harmless the said Gulf, Colorado & Santa Fé Railway Company from the payment of any and all liens, claims, demands, costs, suits, judgments, and executions that may be made, taken, rendered, had, or obtained against the said Gulf, Colorado & Santa Fé Railway Company, or its property, by reason of the nonpayment of any of the debts, claims, or demands of any of the several parties hereinbefore mentioned. * * * If there were doubt as to the meaning of the language first quoted [providing for payment of labor and materials], it is surely dispelled by the full expression of intention contained in the context of the bond."

The present case does not purport to be one of indemnity only, but rather an original undertaking as well for the benefit of persons supplying material, supplies, labor, and the like. In view of our conclusion to recommend the reversal of the judgment of the Court of Civil Appeals, we have examined defendant in error's brief in that court. The brief presented four propositions or points for reversal. What we have said disposes of every question presented in those propositions, save, perhaps, the contention that some of the items recovered for were not within the terms of the bond as being supplies or materials used, or other expenses incurred in the performance of the work, and the further contention that appellee did not plead or prove that such supplies or materials as were furnished had not been paid for by Cecil or had been used in the performance of the contract, or that the same were required for the construction of the work undertaken, and therefore of the character contemplated by the appellant company in executing the bond. We have examined the plaintiff's pleading, and think it is entirely sufficient to support the judgment, especially since no attack is made thereon through any character of exception. Moreover, we have looked into the evidence far enough to convince us the jury might well consider that all the items furnished were supplies necessary to the performance of the contract. We cannot say as matter of law that "groceries, tobacco, matches, meats, soap, hay, corn, dry goods, cigarettes, and snuff," or any of them, were not supplies reasonably necessary for a body of workmen engaged in the character of work covered by this contract. There is nothing submitted in appellant's statement in its brief presenting such propositions as to require such a holding. The Court of Civil Appeals has made no such holding, but clearly its ruling was based upon the theory the bond did not protect plaintiff in error at all. Upon this point, which is one of law, we disagree with that court.

We therefore recommend that the judgment of the Court of Civil Appeals be reversed and the judgment of the trial court be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.