### HEYN v. MASSACHUSETTS BONDING & INS. CO.

#### No. 12262.

Court of Civil Appeals of Texas. Dallas.
Oct. 23, 1937.

Rehearing Denied Nov. 20, 1937.

Max R. Rosenfield and Elihu E. Berwald, both of Dallas, for appellant.

Burgess, Chrestman & Brundidge and L. E. Elliott, all of Dallas, for appellee.

BOND, Chief Justice.

Henry Heyn, as guardian of the person and estate of Thomas V. Furlow, non compos mentis, instituted this suit against the Massachusetts Bonding & Insurance Company, surety on the official bonds of Hon. Arch C. Allen, as county judge in and for Dallas county, Tex., for alleged negligence of the above bounden in nonperformance of his official duties in reference to the estate of said ward, resulting in loss to said estate in the sum of $7,000.

The suit is based upon the negligence of said judge, in failing to perform the duties prescribed by article 4141, R.S.1925, fixing liability on the county judge's bond for loss resulting to the ward due to negligence of said county judge in failing to annually examine into the condition of his estate, the solvency and sufficiency of his guardian's bond, and requiring the guardian to execute another bond in accordance with law; and, the further negligence of said judge in failing to cite the then guardian of Thomas V. Furlow to file annual reports, as required by article 4227, R.S., and to fine said guardian and remove him for his failure to file such reports, as required by articles 4233 and 4234 (as amended [Vernon's Ann.Civ.St. arts. 4233, 4234]).

The cause was submitted to the court without a jury, resulting in judgment for defendant. Plaintiff appeals and presents a number of assignments, and defendant urges counter assignments on the action of the trial court, in holding the statutes under consideration constitutional.

The pertinent statutes under which liability is sought are as follows:

"Art. 4141. The bond of the guardian of the estate of a ward shall be in amount equal to double the estimated value of the personal property belonging to such estate, plus a reasonable amount to be fixed at the discretion of the county judge, to cover rents, revenues and income derived from the renting or use of real estate belonging to such estate. Such bond shall be payable to and approved by the county judge of the county where such guardianship is pending, and conditioned that such guardian will faithfully discharge the duties of guardian of the estate of such ward according to law. It shall be the duty of such county judge to annually examine into the condition of the estate of the ward and the solvency of such guardian's bond, and to require such guardian at any time it may appear that such bond is not ample security to protect such estate and the interests of his ward, to execute another bond in accordance with law. In such case, he shall notify the guardian as in other cases;

and should damage or loss result to the estate of any ward through the negligence of such county judge to perform such duties, such county judge shall be liable on his official bond, payable to such ward, in an amount equal to the loss due to such negligence."

"Art. 4227. If the guardian fails to return an annual account, he shall be cited to return the same at the next term of the court, and to show cause for such failure. If the guardian fails to return such account after being so cited, or fails to show good cause for such failure, he may be fined by the court not exceeding five hundred dollars, for the use of the county; and he and his sureties shall be liable for any fine imposed and all damages sustained by reason of such failure."

"Art 4233. Guardians shall be removed in the following cases, without notice, at a regular term of the court:

"1. When they fail to return, within thirty days after qualification, an inventory and list of claims of the property of the estate which has come to their knowledge.

"2. When they have been required to give a new bond, and fail to do so within the time prescribed.

"3. When they have removed from the State.

"4. When notices or other process of the court cannot be served upon them on account of their whereabouts being unknown."

"Art. 4234. A guardian may be removed by the court of its own motion or on the motion of any person interested in the ward, or his estate, after being cited to answer:

"1. When he fails to return any account which is required to be returned by any provision of this title.

"2. When he fails to obey any proper order of the court or judge.

"3. When there is good cause to believe that he has misapplied, embezzled, or removed, or is about to misapply, embezzle or remove from the State the property committed to his charge, or any part thereof.

"4. When he is proved to have been guilty of gross neglect or mismanagement in the performance of any of his duties as guardian.

"5. When he becomes of unsound mind or becomes an habitual drunkard or is sentenced to imprisonment for a term of years.

"6. When, if he be the guardian of the person, he cruelly treats the ward or neglects to educate and maintain the ward as liberally as the means of such ward and the circumstances of the case demand."

On February 13, 1920, Thomas V. Furlow was adjudged a person of unsound mind, by the county court of Dallas county, and Frederick L. Furlow was appointed guardian of his person and estate by the Honorable Cecil Simpson, then county judge of Dallas county. Frederick L. Furlow duly qualified as such guardian and executed a bond in the sum of $1,000.

On January 1, 1921, Judge Simpson was succeeded as county judge of Dallas county by Hon. Arch C. Allen, who held said office continuously for the years 1921, 1922, 1923, and 1924, having been re-elected for the last two years to succeed himself. Judge Allen executed two successive official bonds with the Massachusetts Bonding & Insurance Company as surety thereon, each in the penal sum of $5,000, expressly payable to the county treasurer of Dallas county, Tex., as provided by article 1928, R.S., and conditioned that the bounden Arch C. Allen, county judge of Dallas county, "shall faithfully perform and discharge all of the duties required of him by law as county judge aforesaid and shall pay over to the person or officer entitled to receive it all monies that may come into his hands as county judge. * * *"

Frederick L. Furlow left the state of Texas, on or about September 19, 1922, without the knowledge of Judge Allen and, since said time, has remained out of the state except for one day in 1924, his whereabouts unknown. He remained as guardian of said Thomas V. Furlow until August 30, 1930, when he was removed by Judge Alexander, the successor of Judge Allen as county judge. During such guardianship, Frederick L. Furlow collected for his said ward the sum of $10,415.22, out of which he unlawfully diverted and misapplied $9,000 to his own use and benefit, of which $7,000 was so diverted and misapplied during the years 1923 and 1924, and $2,000 during the years 1925 and 1926. On August 13, 1934, appellant was appointed and duly qualified as guardian of said ward.

It is admitted in the record that, Frederick L. Furlow is notoriously insolvent, that Thomas V. Furlow is an adjudged insane person and has been continuously

insane since his conviction as such in 1920, and that Judge Allen is dead, having died January 2, 1933. This suit was filed November 2, 1934.

It is further admitted that no bond was required of Frederick L. Furlow and none filed, except the original bond of $1,000 in February, 1920; that no annual accountings were filed by said guardian and none made, and no orders of record showing any action taken by Judge Allen to remove the said guardian or require him to furnish additional security. It is also admitted, that there is no record of citation having ever been issued out of the county court of Dallas county, citing the said Frederick L. Furlow for contempt of court for failure to file annual reports for the years 1922, 1923, and 1924, respectively; that there is no record of proceedings having been instituted during such time to hold said guardian and his sureties liable for loss or damage, sustained by said ward by reason of the guardian's failure to file report of accountings; and that there is no record of any proceedings having been instituted by the county court, during the tenure of Judge Allen in office, to remove the said guardian for failure to render such annual reports.

It is further admitted in the record that, on March 23, 1921, Frederick L. Furlow filed an accounting in the estate of his ward, showing that the said guardian had on hand in cash the sum of $1,088.85, belonging to the estate of Thomas V. Furlow, and that Judge Allen, on March 29, 1921, duly approved said accounting; and that on April 18, 1921, there was also filed in said guardianship proceedings, a petition for allowance to said guardian of $40 per month for support and maintenance of his said ward, in which is recited "that the United States Government is paying to him, as guardian of such ward, the sum of $100 per month as compensation, and that under a recent holding, expects same to be increased $57.50, making a total of $157.50 per month to be paid to him as such guardian"; and that, on April 18, 1921, Judge Allen entered an order in the minutes of his court granting the allowance in accordance with the above petition.

Before entering into a consideration of plaintiff's assignments, we will first consider the assignments of appellee. The contention is based on the theory that the statutes in question impose nonjudicial duties on county judges, and are violative of provisions in article 2, § 1, of the Constitution, which provides that, "The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted"; and also violative of the provisions in article 5, §§ 15, 16, 17, and 18, of the Constitution, creating the county court and prescribing its jurisdiction, in which it is made to appear that no provision is made to impose upon the county court nonjudicial duties. In other words, the contention is that there is no constitutional provision imposing upon the county judge the executive duty of making investigations, as prescribed by said statutes, upon which to base a proceeding in court; that the judicial powers of the county court, in view of the above articles of the Constitution, include: (1) The power to hear facts; (2) the power to decide issues raised by pleadings; (3) the power to decide questions of law; and (4) the power to enter and enforce judgments. Thus, such judicial power of the county court is only to hear and judicially determine facts in respect to the condition of estates of wards, the solvency and sufficiency of guardian's bonds, and the protection of estates of wards, when properly brought before the court for review.

In our opinion, the constitutionality of said statutes is free from doubt. Article 2, § 1, supra, in providing for the division of power of government into three departments, and that no person or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the other departments, is limited in the expressed words: "except in the instances herein expressly permitted." Article 5, § 16, vests in the county court the general jurisdiction of a probate court and provides that the county court shall " * * * appoint guardians of minors, idiots, lunatics, persons non compos mentis and common drunkards, * * * settle accounts of executors, transact all business appertaining to deceased persons, minors, idiots, lunatics, persons non compos mentis and common drunkards, * * * as provided by law."

Article 5, § 22, provides that, "The Legislature shall have power, by local or general law, to increase, diminish or change the civil and criminal jurisdiction of County Courts." * * * Obviously, article 2, § 1, supra, in providing for the division of power· of government into three departments, has limited the declaration of division by the words "except in the instances herein expressly permitted." Thus, the grant of power to the county court (article 5, § 16), conferring upon that court the general jurisdiction of probate matters, the right to transact all business appertaining to insane persons, and empower the Legislature (article 5, § 22) to increase, diminish or change the jurisdiction of the county court, are some of the provisions or "instances expressly permitted" and the constitutional basis for enactment of the statutes (articles 4141, 4227, 4233, and 4234, supra), imposing upon the judge. of the county court the duty to annually examine into the condition of the estates of wards, the solvency and sufficiency of guardians' bonds, require ample security to protect such estates, and to exercise supervision over the ward's interest. We think these powers come clearly under the purview of the Constitution.

In Jones et al. v. Alexander et al., 122 Tex. 328, 59 S.W.2d 1080, Judge Sharp for the Commission of Appeals, clearly demonstrates that courts, under proper legislative grant, may perform functions nonjudicial; that the statute there under consideration (article 5139, R.S.), imposing nonjudicial duties upon district courts of supervision over minors, to obtain information concerning the welfare of such minors, and direct their custody, did not violate any provision of the Constitution. Indeed, the Commission of Appeals in that case had under consideration the constitutional grant of power to district courts, as imposed by article 5, § 8, of the Constitution, which provides that the district court shall have jurisdiction and general control over "minors under such regulations as may be prescribed by law." A comparison of sections 8 and 16, art. 5, of the Constitution, discloses that county courts are vested with the same kind and character of jurisdiction over insane persons as district courts are given of minors; and, by analogy, the nonjudicial duties imposed on county courts by the statutes under consideration are permitted by the Constitution (article 5, §§ 16 and 22), and delegates to such county courts and judges thereof functions as are exercised and permitted by district courts (article 5, § 8, supra). We overrule appellee's counterassignment, attacking the constitutionality of the basic statutes of this suit.

Under the foregoing provisions of the statutes, obviously it is the duty of judges of county courts annually to examine. into the condition of the estates of wards, the sufficiency of guardians' bonds, and, if and when the bonds given are not ample security to protect the estates and the wards' interest therein, to require such guardians to execute other bonds in accordance with law; and further, county judges are required to compel guardians to return reports of annual accountings into court (a duty imposed under article 4225), and to exact fines for contempt of court and assess damages on guardians and their bondsmen for nonperformance of such duties; and further, it is the duty of county judges to remove guardians when they have failed to give bonds as required by law, or when such guardians have absented themselves from the state, or have failed to file annual accounts, or have refused to obey proper orders of the county judge. Manifestly, the above mandatory duties are imposed upon county judges by reason of inability of minors, idiots, lunatics, persons non compos mentis, and common drunkards to ·take care of their own interests. The welfare of persons laboring under such disability has. always been a matter of deep concern to the state. This state has in a manner made the county judges its fiscal agents to confide estates of such persons to the custody. of prudent and safe persons, and have carefully thrown safeguards around such trustees, as to require of them a faithful discharge of their trust. The statutes compelling guardians to give. solvent and sufficient bonds in amount equal to double the estimated value of the personal property belonging to their wards, to file annual accountings as to elicit truthful information as to the condition of such estates, to obey proper orders of the county court or judge, and to always remain within the jurisdiction of such court or judge, are for the protection of such disabled persons and their estates. These duties are mandatory; the failure of performance carries with it penal punishment and civil liability, and removal of such fiduciaries. So, also, is the above statutory duties imposed upon county judges of equal force and effect, and the failure of performance

is negligence per se, for which such county judges are amenable and their official bonds liable for loss due to such negligence.

It appears from the agreed stipulation of facts, that Frederick L. Furlow executed a guardian's bond in the penal sum of $1,000, as may have been required of a guardian of only the person of such ward (article 4140) and the insufficiency of such bond was expressly called to the county judge's attention by the guardian's report of accounting filed on March 23, 1921, disclosing that such guardian had then on hand the sum of $1,088.85 in cash, belonging to the estate of his ward. Notwithstanding the statute (article 4141), imposing upon said guardian the duty to make a bond in an amount equal to double the estimated value of the personal property belonging to his ward's estate, and imposing the duty upon the county judge to require the posting of such a bond, the county judge approved the accounting on March 29, 1921, but made no order compelling the guardian to execute such bond. Furthermore, the county judge's attention was again called to the insufficiency of the guardian's bond by the petition filed by such guardian on April 18, 1921, for an allowance of $40 per month, in which it was disclosed that such guardian was then receiving for his ward the sum of $100 per month compensation from the United States government, and expected it to be increased to $157.50. This allowance was granted by order of the county judge, but no additional bond was required of the guardian to protect the estate and interest of said ward.

■ It will be observed that article 4141, supra, not only imposes well-defined duties upon the county judge, but it expressly creates civil liability. The official bond of such county judge is made answerable for the county judge's dereliction in the performance of his duties. Judge Allen executed his official bonds and took the oath of office with full knowledge of the existence of that statute, and all statutory duties and responsibilities imposed on him as county judge; thus, he and the surety on his official bond accepted the responsibilities of the trust and vouched for the faithful performance of those duties. The official bonds were executed pursuant to such obligations, thus the terms of the statutes relating to the liability of the obligors became a part of the bonds themselves.

In 34 Tex.Jur. 563, the text statement is: "The obligors in an official bond which has been executed pursuant to statute are presumed to have known the terms of the statute and to have contracted accordingly. * * * The statutes upon which the bond rests and to which it relates, and which specify the duties of the officer, become a part of it to the same extent as though incorporated in the instrument, and should be read into it regardless of the intention of the parties". This text is supported by numerous authorities. In Globe Indemnity Co. v. Barnes et al., 288 S.W. 121, 122, Judge Speer, of the Commission of Appeals, in discussing this question, said: "It is well settled that, where a bond is executed with the intention upon the part of all parties to comply with the requirements of a statute, the terms of such statute will become a part of such obligation, by incorporation as it were, even though the bond itself otherwise be silent as to the statutory obligations. United States Fidelity & Guaranty Co. v. Henderson County (Tex.Com.App.) 276 S.W. 203; Id. (Tex.Com.App.) 276 S.W. 1119; Smith v. Fidelity, etc., Co. (Tex.Com.App.) 280 S.W. 767."

The contention is made in pleadings and so found by the trial court, that appellant's cause of action is barred by applicable statutes of limitation, in that, the legal title to the cause of action was in the county treasurer of Dallas county, the express payee in the official bonds, and that appellant and his ward were only beneficial owners, thus whatever interest they may have in such bonds is purely equitable and could only be asserted by said county treasurer.

■ It is well settled, we think, that the holders of equitable titles in contracts are placed on the same footing as that of holders of legal titles; and, where a cause of action is barred as to the holder of such legal title, those beneficially interested are likewise barred, though under disability. 37 C.J. 719; Susan H. Collins v. E. McCarty et al., 68 Tex. 150, 3 S.W. 730, 2 Am.St.Rep. 475; Smith et al. v. Price et al. (Tex.Civ.App.) 230 S.W. 836; Matthews et al. v. Darnell, 27 Tex.Civ.App. 181, 65 S.W. 890. But this rule has no application when the legal title is vested in a cestui que trust who labors under disability. The statutes of limitation which might be a bar against a trustee or guardian holding the legal title for the beneficial

or equitable owner, will not constitute a bar against such cestui.

As already pointed out, the official bonds of Judge Allen were expressly made payable to the county treasurer. Indeed, the bonds in terms were primarily for the benefit of the county; thus, the county treasurer held the legal title to any cause of action arising thereunder for the benefit of the persons or officers named therein; but, as in the case at bar, article 4141, supra, in express terms, provides that "should damage or loss result to the estate of any ward through the negligence of such county judge to perform such duties [enumerated], such county judge shall be liable on his official bond, payable to such ward, in an amount equal to the loss due to such negligence"; obviously, such provision of the statute makes the ward, whose estate has been dissipated and lost due to negligence of the county judge, the payee, by adoption, in the judge's official bonds, as if written therein, thus the loss is expressly made "payable to such ward" and vests in him the legal title to any such cause of action. Therefore, Thomas V. Furlow, being vested with the legal title to the cause of action, is not precluded by statutes of limitation on account of his admitted disability, and is entitled to sue through his duly appointed guardian.

Appellant assigns error on the action of the trial court in permitting, over his objection, the introduction of testimony detailing the amount of work and nature of duties performed by Judge Allen, from which the trial court made the following findings or résumé of facts: "During the four year tenure of Judge Arch C. Allen, as County Judge, he presided over the Commissioners' Court, held Probate Court, Lunacy Court, Juvenile Court, and in addition, carried on the sundry other duties and the heavy correspondence incident to the County Judge's office in Dallas County. The volume of work and number of orders entered during the four year tenure of Judge Arch C. Allen were approximately equal for each year. The records show that during said four years the County spent $14,713,003.46, requiring the approval of the Commissioners' Court. Bonds aggregating $4,625,000.00 in denominations of $1,000 each, were issued by the County, each of which bond required the signature of the County Judge. Commissioners' Court met, in regular meetings and conferences, 1141 times; and 1,096 orders were entered by the court, Judge Allen presiding. 127 applications for widow's pensions were passed upon. 528 juvenile cases and 540 lunacy cases were tried by Judge Allen. There were 416 applications for admission to tuberculosis sanitariums, each of which applications required the signature of Judge Allen in three places. There were 19 Inheritance Tax Reports presented to and signed by Judge Allen in 1924. There were 1007 Probate cases pending when Judge Allen took office and 1965 were filed during his tenure of office. 9,411 probate orders were entered in the four years. In addition, 904 annual and final accounts were approved and 899 claims passed on." From these related facts, the conclusion was reached by the trial court, that because of the onerous and burdensome duties thus imposed, the county judge was unable to attend to his other duties relating to wards' estates.

We think the excuse presented by the above testimony affords no defense to appellant's cause of action. The negligence of the county judge is predicated upon the nonperformance of that which the law says must be performed. It does not present a question as to whether or not a prudent man would have obeyed the statute, or an energetic man could have performed all those duties. Every person who accepts the office of county judge is by law burdened with all the duties imposed upon such officer, and is thus obligated to perform all of such duties or suffer the consequences for his failures. The responsibilities of county judges as to the interest and welfare of minors and lunatics, like unto guardians' trust, go with the emoluments of the position, and he who accepts the one is responsible for the other. We think the testimony adduced is not admissible, such presents no legal excuse for nonperformance of duty and clearly offends against the protective statutes with reference to the welfare of wards' estates and the liability resulting for losses. Appellee cannot escape liability for such nonperformance of statutory duties, due to such inability of its bounden because of such other official functions.

Therefore, from what we have said, the case having been fully developed, the judgment of the lower court should be reversed and here rendered in favor of appellant, and against appellee for the sum of $7,000, with 6 per cent. interest thereon from

date of judgment of the court below; it is so ordered.

Reversed and rendered.

YOUNG, J., not sitting.

## On Motion for Rehearing.

■ Appellee has filed motion for rehearing, suggesting that, in our original opinion, we incorrectly stated that the "insufficiency of such (the guardian's) bond was expressly called to the judge's attention by the guardian's report of accounting, filed on March 23, 1921 * * *" and that such appears from the "agreed stipulation of facts." We did not intend to convey the idea that there was an agreement to the effect that Judge Allen's attention was directly called to the insufficiency of the bond on the date mentioned; but, that, in our opinion, the record reflects that it was called to his attention in the report of accounting approved by the county judge, which showed that the guardian then had on hand the sum of $1,088.85, in cash, belonging to the estate of the ward, and that he was then being paid $100 per month additional from the United States government and expected it to be increased to $157.50 per month. Thus, obviously, the $1,000 bond posted by the guardian was insufficient to protect the interest of said ward. The county judge knew, or should have known, that the $1,000 bond was insufficient, and his failure to require additional security was negligence per se, and such failure, along with the other failures of official duties, as reflected in the record and pointed out in our original opinion, were the direct and proximate cause of the ward's loss.

The original opinion is corrected in the particulars suggested above; motion for rehearing is overruled.