

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

WAGGONER CARR
ATTORNEY GENERAL

July 29, 1963

Honorable Joe Resweber
County Attorney
Harris County
Houston 2, Texas

Opinion No. C-114

Re: Duties of the Judge
of the Probate Court
of Harris County, un-
der the facts states.

Dear Mr. Resweber:

Your request for an opinion reads as follows:

"During the month of June, 1962,
the Grand Jury of Harris County, Texas,
returned True Bills of Indictment against
Clem McClelland (Judge of the Probate Court
of Harris County, Texas) and several admin-
istrators and guardians, charging them with
theft and/or embezzlement from certain es-
tates under the jurisdiction of the Probate
Court of Harris County, Texas.

"On June 20, 1962, a petition for the
removal of Clem McClelland as Judge of the
Probate Court of Harris County was filed in
the 61st Judicial District Court, and on
June 25, 1962, the said Court entered an
order whereby Clem McClelland was suspended
temporarily and Arthur C. Lesher, Jr. was
appointed Probate Judge of Harris County,
Arthur C. Lesher, Jr. served as Probate
Judge of Harris County until January 1,
1963, when Jack Smith (having been elect-
ed in the November, 1962 election) took
office as Probate Judge.

"Up to the present time Clem McClelland
has been tried on only one of the indict-
ments, and said conviction was very recent-
ly reversed by the Court of Criminal Appeals.
The other indictments against Clem McClelland
are still pending.

-563-

"In view of the above facts, Jack Smith, Probate Judge of Harris County, has requested an opinion to the following questions:

"1. There are between 5,000 and 10,000 files in this Court on estates which have not been closed but are currently open estates with unfinished business under the jurisdiction of this Court; these files are located in the office of the County Clerk, Probate Division. Is it the responsibility of the Probate Judge to search each of these files to ascertain their status or may the status of each of these files be ascertained as they are placed on the docket of the Probate Court for hearing?

"2. Is it the duty of the Probate Judge, where a personal representative has been indicted, but not convicted, because of transactions in the handling of an estate, to remove such person or to cause an investigation to be made?

"3. Is it the duty of the Probate Judge where persons other than personal representatives in an estate have been indicted, but not convicted, for transactions involved in an estate, to cause an investigation to be made to see whether or not a civil cause of action should be filed against the indicted person or is this the duty of the personal representative?

"4. What responsibility does the Probate Judge and bonding company have when he approves annual accounts in which there are orders by a prior judge which are suspect?

"Attached hereto is our memorandum brief.
Please furnish us your opinion on the ques-
tions presented."

Section 36 of the Probate Code provides:

"It shall be the duty of the judge
of each county court to use reasonable
diligence to see that personal representa-
tives of estates being administered under
orders of the court, guardians of the per-
sons of wards, and other officers of the
court, perform the duties enjoined upon
them by law pertaining to such estates and
wards. The judge shall annually examine
into the condition of each of said estates,
the well-being of each ward of the court,
and the solvency of the bonds of personal
representatives of estates and guardians
of persons. He shall require such repre-
sentatives or guardians, at any time he
shall find that their bonds are not suf-
ficient to protect such estate or wards,
to execute new bonds in accordance with
law. In each such case, he shall notify
the personal representative or guardian,
and the sureties on the bond, as provided
by law; and should damage or loss result to
estates or wards through the failure of the
judge to use reasonable diligence in the per-
formance of his duties, he shall be liable
on his official bond to those damages by
such neglect."

Section 222 of the Probate Code states the grounds
for removal of any personal representative appointed under
the provisions of the Probate Code, both with and without
notice. Subdivision (c) of Section 222 provides:

"Order of Removal. The order of remov-
al shall state the cause thereof. It shall
require that any letters issued to the one

removed shall, if he has been personally serv-
ed with citation, be surrendered, and that all
such letters be cancelled of record, whether
delivered or not. It shall further require as
to all the estate remaining in the hands of
a removed person, delivery thereof to the per-
son or persons entitled thereto, or to one
who has been appointed and has qualified as
successor representative, and as to the person
of a ward, that control be relinquished as re-
quired in the order."

Section 233 of the Probate Code provides:

"Every personal representative of an
estate shall use ordinary diligence to
collect all claims and debts due the estate
and to recover possession of all property
of the estate to which its owners have
claim or title, provided there is a reason-
able prospect of collecting such claims or
of recovering such property. If he wilfully
neglects to use such diligence, he and the
sureties on his bond shall be liable, at
the suit of any person interested in the es-
tate, for the use of the estate, for the
amount of such claims or the value of such
property as has been lost by such neglect.
Such representatives may enter into contract
to convey, or may convey, a contingent in-
terest in any property sought to be recover-
ed, not exceeding one-third thereof, for
services of attorneys and incidental expenses,
subject only to approval of the court in
which the estate is being administered."

In Crouch v. Stanley, 348 S.W.2d 543 (Tex. Civ. App.
1961), an injunctive proceeding regarding the appointment
of the Probate Court of a new administrator pending trial
in the Probate Court of an appeal from a removal proceed-
ing of the original administrator, the Court held:

"Assuming that the order of the Probate Court improperly removed Mr. Stanley as the administrator for the estate it would nevertheless be true that his appeal therefrom preserved his status as administrator and he will continue to be such pending a trial de novo in the District Court, and at least until such time as the judgment of that court shall become final.  Power to remove a person from his office as an administrator for the estate of a decedent is given by law, in the first instance, to the Probate Court.  Such a person who considers himself aggrieved by such an order of removal is given by law the remedy of an appeal to the District Court for a trial de novo.  If the remedy of appeal was not so given the District Court would not have any jurisdiction to interfere with the order of removal, for courts of equity will not interfere to protect a person from removal from office by a man or body of men to whom such power of removal is given by law.
" . . .

"If the injunction to the extent under consideration be undisturbed, the Probate Court would be helpless to protect the interests of the estate such court is charged by law to administer, in the event of such a contingency, and the estate's beneficiaries would be left with recourse solely confined to damages against the administrator and the sureties on his bond.  In a situation such as that hypothesized, and where the Probate Court might attempt to appoint an administrator to bring and prosecute a suit in behalf of the estate, such attempted appointment might be stayed through the office of an appeal from the order of appointment.  Pursuant to such proceedings the Probate Court would be empowered, through requirement of new or additional bond, more adequately

>to protect the interests of the estate in
the event it be ultimately determined that
the administrator's refusal to institute
such suit actually operated to the detriment
of the estate and the beneficiaries thereof."
(Emphasis added).

In Heyn v. Massachusetts Bonding Company, 110 S.W.2d 261 (Tex.Civ.App. 1937, error dism.), the Court in sustaining the constitutionality of statutes imposing the duty on the Judge of the Probate Court to annually examine into the condition of wards' estates (now Section 36 of the Probate Code) held:

>"Under the foregoing provisions of the
statutes, obviously it is the duty of judges
of county courts annually to examine into the
condition of the estates of wards, the suffi-
ciency of guardians' bonds, and, if and when
the bonds given are not ample security to pro-
tect the estates and the wards' interest there-
in, to require such guardians to execute other
bonds in accordance with law; and further, coun-
ty judges are required to compel guardians to re-
turn reports of annual accountings into court
(a duty imposed under article 4225), and to exact
fines for contempt of court and assess damages on
guardians and their bondsmen for nonperformance of
such duties; and further, it is the duty of coun-
ty judges to remove guardians when they have fail-
ed to give bonds as required by law, or when such
guardians have absented themselves from the state,
or have failed to file annual accounts, or have
refused to obey proper orders of the county judge.
Manifestly, the above mandatory duties are imposed
upon county judges by reason of inability of mi-
nors, idiots, lunatics, persons non campos mentis,
and common drunkards to take care of their own in-
terests. The welfare of persons laboring under
such disability has always been a matter of deep

concern to the state. This state has in a
manner made the county judges its fiscal a-
gents to confide estates of such persons to
the custody of prudent and safe persons, and
have carefully thrown safeguards around such
trustees, as to require of them a faithful
discharge of their trust. The statutes com-
pelling guardians to give solvent and suffi-
cient bonds in amount equal to double the es-
timated value of the personal property belong-
ing to their wards, to file annual accountings
as to elicit truthful information as to the
condition of such estates, to obey proper or-
ders of the county court or judge, and to al-
ways remain within the jurisdiction of such
court or judge, are for the protection of
such disabled persons and their estates.
These duties are mandatory; the failure of
performance carries with it penal punishment
and civil liability, and removal of such
fiduciaries. So, also, is the above statu-
tory duties imposed upon the county judges
of equal force and effect, and the failure
of performance is negligence per se, for
which such county judges are amenable and
their official bonds liable for loss due to
such negligence."

In view of the foregoing, you are advised that the
provisions of Section 36 of the Probate Code requiring
the judge to annually examine into the condition of each
of the estates is a mandatory duty and it is the respon-
sibility of the Probate Judge to search each of the files
to ascertain their status annually. It is the duty of
the Probate Judge to remove the personal representative
in the event that the Court has knowledge of existing
grounds for removal prescribed by Section 222 of the
Probate Code. Whether a violation of Section 222 by
the personal representative has occurred is a fact ques-
tion to be determined by the Probate Judge.

In view of the provisions of Sections 36 and 233 of the Probate Code, you are advised that it is the duty of the personal representative to use ordinary diligence to collect all claims and debts due an estate and to recover possession of all property of an estate to which its owners have claim or title, provided there is reasonable prospect of collecting such claim. In the event the personal representative fails to perform such duty, the Probate Judge is authorized to remove the personal representative under the provisions of Section 222 of the Probate Code. Therefore, it is the duty of the Probate Judge to use such reasonable diligence as is necessary to determine whether the personal representative is performing the duties required by Section 233 of the Probate Code.

In answer to your fourth question, Section 401 of the Probate Code provides:

"Action Upon Annual Accounts.

"These rules shall govern the handling of annual accounts:

(a) They shall be filed with the county clerk, and the filing thereof shall be noted forthwith upon the judge's docket.

(b) Before being considered by the judge, the account shall remain on file ten (10) days.

(c) At any time after the expiration of ten (10) days after the filing of an annual account, the judge shall consider same, and may continue the hearing thereon until fully advised as to all items of said account.

(d) No accounting shall be approved unless possession of cash, listed securities, or other assets held in safekeeping or on deposit under order of court has been proved as required by law.

(e) If the account be found incorrect, it shall be corrected. When corrected to the satisfaction of the court, it shall be approved by an order of court, and the court shall then act with respect to unpaid claims, as follows:

(1) Order for Payment of Claims in Full. If it shall appear from the exhibit, or from other evidence, that the estate is wholly solvent, and that the representative has in his hands sufficient funds for the payment of every character of claims against the estate, the court shall order immediate payment to be made of all claims allowed and approved or established by judgment.

(2) Order for Pro Rata Payment of Claims. If it shall appear from the account, or from other evidence, that the funds on hand are not sufficient for the payment of all the said claims, or if the estate is insolvent and the personal representative has any funds on hand, the court shall order such funds to be applied to the payment of all claims having a preference in the order of their priority if they, or any of them, be still unpaid, and then to the payment pro rata of the other claims allowed and approved or established by final judgment, taking into consideration also the claims that were presented within twelve (12) months after the granting of administration, and those which are in suit or on which suit may yet be instituted."

In Heyn v. Massachusetts Bonding Company, supra, the Court held on motion for rehearing:

" . . . The county judge knew, or should have known, that the $1,000 bond was insufficient, and his failure to require additional security was negligence per se, and such failure, along with the other failures of official duties, as

-571-

reflected in the record and pointed out
in our original opinion, were the direct
and proximate cause of the ward's loss."

In view of the foregoing, you are advised in answer to your fourth question that the Probate Judge and his bonding company are liable if he is negligent in the performance of his duty in approving annual accounts, if such negligence constitutes proximate cause of a loss to the estate.

## SUMMARY

A Probate Judge is required to
annually examine into the condition
of each estate being administered un-
der orders of the Court and to use rea-
sonable diligence to determine that the
personal representatives of estates be-
ing administered under orders of the
Court are performing their duties required
by the provisions of the Probate Code.

Yours very truly,

WAGGONER CARR
Attorney General

By John Reeves
John Reeves
Assistant

JR:ms:jh

APPROVED:
OPINION COMMITTEE
W. V. Geppert, Chairman
C. L. Snow, Jr.
Scott Garrison
Paul Phy
Bill Allen
APPROVED FOR THE ATTORNEY GENERAL
BY: Stanton Stone